CV-23-403-TUC-ShR CpsoT

☒ FILED   ☐ LODGED

**4-10-2024**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

_Jonathon Isaiah Gaines #367131_
Name and Prisoner/Booking Number

_ASPc-Lewis BuckeYe, AZ 85326_
Place of Confinement

_PO BOX 70 BuckeYe, AZ 85326_
Mailing Address

_BuckeYe, Arizona 85326_
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

_Jonathon Isaiah Gaines_ ,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) _Bryan pralgo_ ,
(Full Name of Defendant)

(2) _Savayra_ ,

(3) _Ballardos_ ,

(4) _K. cole_ ,

Defendant(s).

☑ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. _CV-23-403-TUC-ShRCpsot_
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

_Jury trial De manded "_

☐ Original Complaint
☑ First Amended Complaint
☐ Second Amended Complaint

## A.  JURISDICTION

1.    This Court has jurisdiction over this action pursuant to:
☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
☐ 28 U.S.C. § 1331; _Bivens v. Six Unknown Federal Narcotics Agents_, 403 U.S. 388 (1971).
☐ Other: _____

2.    Institution/city where violation occurred: _Cochise county Jail, Bisbee, Arizona 85635_ .

**550/555**

## B.  DEFENDANTS

1.  Name of first Defendant: _Bryan pralgo_____.  The first Defendant is employed
as: _____Sargent_____ at _____Cochise county Jail_____.
                    (Position and Title)                              (Institution)

2.  Name of second Defendant: _Savagra_____  The second Defendant is employed as:
as: _____corpral_____ at _____Cochise county Jail_____.
                    (Position and Title)                              (Institution)

3.  Name of third Defendant: ____Ballardos_____.  The third Defendant is employed
as: _____corpral_____ at _____Cochise county Jail_____.
                    (Position and Title)                              (Institution)

4.  Name of fourth Defendant: ____K. cole_____.  The fourth Defendant is employed
as: _____K9 Detention officer_____ at _____Cochise county Jail_____.
                    (Position and Title)                              (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.  PREVIOUS LAWSUITS

1.  Have you filed any other lawsuits while you were a prisoner?    ☐ Yes    ☑ No

2.  If yes, how many lawsuits have you filed? _∅_.    Describe the previous lawsuits:

   a.  First prior lawsuit:
      1.  Parties: _____ v. _____
      2.  Court and case number: _____.
      3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
         _____.

   b.  Second prior lawsuit:
      1.  Parties: _____ v. _____
      2.  Court and case number: _____.
      3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
         _____.

   c.  Third prior lawsuit:
      1.  Parties: _____ v. _____
      2.  Court and case number: _____.
      3.  Result:  (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
         _____.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D.  CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: _14th amendment rights_

2. **Count I.** Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: _Due process_

3. **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

   on Jan 12, 2024 Sergent pralgo came to north A pod and Locked every body Down and came to my cell telling me to get dress iam getting moved out of the podibegin to ask why? he said this is not up for Debate. i then grab the rules and inmate handbook that say's/page 2 of the inmate handbook each inmate charge with a rule violation is assured Freedom From excessive punishment— i then said you havent even formally charge me with a rule infraction i havent even receive written paper work. sergent pralgo ignores this and say's you are going to be moved i Don't have to tell you any thing. i then starting getting cose Law From Wolff v. mcDonnell where he has to give me written notice of these accusations. he ignores this also and says so you want to make this hard thats fine i Love using my taser cpl savagra steps in and say's gaines you should know how this works we don't have to give you a hearing i then said i have been Doing nothing but working on my civil case i have a dead line to meet they both smile and said we know. i then said i'll go just let me grab my Legal paperwork that's when cpl savagra said no we have to go thru it i then said you guy's have never Done that before. sergent pralgo threaten's me again with a taser and pepper ball explosive gun then get scared take a step back and close the Door realizing their intention is to tamper with my paperwork sergent pralgo send's his goon savraga to beat me up teze me and spray me cpl savagra hurt in the room and punch's me in the mouth and drags me to special housing in a shit stain black molded cell this showing reck less disvegard for my life rights and safty

4. **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
   Severe emotional treuma. and Loss of dignity Leaving me in physical pain and mental anguish and trusting cpl savraga injures all on forget

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count I?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count I to the highest level?  ☐ Yes  ☒ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not.  _Staff told me nobody would respond_

## COUNT II

1. State the constitutional or other federal civil right that was violated: 14th amendment rights

2. **Count II.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Disciplinary proceedings
   - ☑ Excessive force by an officer
   - ☐ Mail
   - ☐ Property
   - ☐ Threat to safety
   - ☐ Access to the court
   - ☐ Exercise of religion
   - ☐ Other: _____
   - ☐ Medical care
   - ☐ Retaliation

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

On Jan 12, 2024 cpl savage burst in my cell taze me while i was on the ground already cuff and not resisting and intentionally step on my hand and crushing my thumb thus breaking it to add insult to injury he didn't want me to be walk out of the north A pod where i was at. he wanted me hogtied and drag out to set a example to the pod. his words get Down or tay down meaning if i Don't Listen follow his Arbitrary and capricious actions/orders this is the treatment i should come to expect before being taze i told him waxter is on the ground that i was cuff in and they also i have a heart condition and that i am not resisting he says fuck it and hit's me in the mouth and tases me and steps on my hand crushing my thumb breaking it then drags me out the pod and put's me in a shit stain cell with black mold and gets permission from Lt. Ariel monge to refuse me to get a medical request to Document what he did to my hand. Lt. Ariel monge Let's me know that i won't get no hearing concerning any accusation and that if i continuing to try to hold them accountable this will be what i should expect because he is the one that order me out of north A pod to special housing because i held his staff accountable two day prior from Jan 12, 2024 where he order north A Lock Down for something that happen a month ago. cpl Romero intentionally treated me like i was terrist threatening me yelling loud screaming no negosiation when i was trying to get a phone situation fix he later said he wanted to take me Down and that i disapointed him by not resisting sargent pledge when returning my legal paper work that was missing a lot of pages and mici civil complaint that i was trying to work on was compltly missing

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Severe mental exustion and anguish and physical injury with my hand

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☑ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count II?  ☑ Yes  ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?  ☑ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

## COUNT III

1. State the constitutional or other federal civil right that was violated: 6th amendments right

2. **Count III.** Identify the issue involved. Check **only one.** State additional issues in separate counts.
   ☐ Basic necessities ☑ Mail ☐ Access to the court ☐ Medical care
   ☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
   ☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

over six times my properly mark Legal mail was consistently improperly opened and read out of the six times those incidents happen i was only inform of two people opening it. Feb 12 2021 Doo officer velasquez Approx 7:06-8:30 brought me my Legal mail that was already opened and read outside my presence without my consent. i ask him Doe's he have any idea who open it and read it he responded no he doe not he contends it was already open before he got ahold of it in the control room. I then filed a Grievance on this to which sargent pralgo didnt really respond to the Grievance issue but verbally he said to me it was cpl savugra who did it. i then ask cpl savugra who quickly responded no but also continued to say that the staff are allowed to open and read Legal mail his reasoning being they also do it in prison i then said it is a blatant disregard on my amendment-right she ignores me and walk away. Corpral Ballardos around 10 05 2021 intentionaly improperly mishandle and read my properly mark Legal mail. corpral Ballardos deliver mail outside it's envelope and with pages missing also the envelope it came in was gone when i broach the topic with cpl Ballardos he initially Denied the circumstance of the situation saying he has no idea how this happen then Later admitted his fault in this. I told him you have chilled my communication with my attorney and that you also tampered with my Legal mail which contained evidence in my case, i ask him why did you wrote on my Legal mail? he responded by storming off walking away i then filed a Grievance. to which sargent pralgo says he was being held accountable

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Chilled my communications with my attorney and potentially affected my case. Leaving me in panic severe mental and emotional trauma because my right to conidentiality, privacy, defense. strategy was Just destroyed

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Count III to the highest level? ☐ Yes ☑ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. They did not respond

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

5

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

I am seeking injunctive relief. I am also seeking monetary Relief Specifically 100,000 A hundred thousand dollars a day for everyday i have to deal with this unprofessional Like conduct from "professionals" for everyday iam being treated improperly, and in humanely.(subject to change). Im also seeking for the cochise county Jails staff to be redressed for their severe Lack of humanity and reckless disregard for my Life and rights

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  April 8th, 2024
DATE

SIGNATURE OF PLAINTIFF

Johnny Reed
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

(Signature of attorney, if any)

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.   If you need more space, you may attach no more than fifteen additional pages.   But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

1A

5. romero ▓ (CPI)
6. D~ Aguiiar (D.O)
7. S. Laid Law (DO)
8. Nguyen (SSg)
9. Ariel monge (Lt)
10. crissY heisner (Lt)
11. Kenneth bradshaw (JC)

2A

5   Name of fifth Defendant: Ariel monge _____ . The fifth Defendant is
employed as: Lieutenant _____ at cochise county Jail _____
          (Position and title)      (Institution)

6   name of six Defendant: crissy heisner. The six Defendant is employed as:
Lieutenant at cochise county Jail _____
(Position and title)   (Institution)

7   Name of seventh Defendant: S Laidlaw. The seventh Defendant is employed as:
Dentention officer at cochise county Jail _____
(Position and title)   (Institution)

8   name of eighth Defendant: D~Aguiur . The eighth Defendant is employed as:
Dentention officer at cochise county Jail _____
(Position and title)   (Institution)

9   name of 9th Defendant: romero . The 9th Defendant is employed as:
corpral ____ at cochise county Jail _____
(Position and title)   (Institution)

10  name of tenth Defendant: SSG Nguyen. The tenth Defendant is employed as:
national SSG  at cochise county Jail _____
(Position and title)   (Institution)

Count B

State the constitutional or other federal civil right that was
violated 8th amendments rights

other ☑ Cruel and unusual punishment

1      Facts Supporting Cont-

On 09/15/23, K9 officer Cole begin harrassing and antagonizing me
and every her games dress who gets to go home everyday and watch amazon
and netflix on a 65 inch tv. Me and not you and she stated this right
in front of sergeant prujo I then tell Sergeant prujo this has been a ongoing
issue with her and she does it because she has also tore me to court and then
possible time I may or may not get. Sergeant prujo violates state law by refusing
me to shower by ignoring my current request to get the shower FIX. After a week
of this I then filed a grievance to which Sergeant Prujo admitted fault
but refused to give me my grievance back his reasoning was I'm not going
to let you sue me + your shower is now fix and you will be alright. D9 officer
bristow refuse to give me a Grievance form on two occasions I rather
I know she is not allowed to do that she responds I don't care names I then
talk with Sergent Keller to resolve the situation and he gives me a Grievance
told him she did non want me to have her accountable a Sgt Mcdeen intentionally
read my Medical request and purposely lied about it I then later admitted
fault when I ask him why did he do that he replied he was bored a Dr agudo
intentionally lied about me refusing to take those my ocujarl the result of
he has more that night 15 staff came retaliated on him and moved me
to special housing [unit] when asking why I didn't get a hearing or written
notice on the move Lt thepson said administrative discharge I then said than again
in the new book Lt monge filing isn't done knowing and get cut loose when
trying to talk with the admin on the Sout Lt hanmer and Lt monge both
interrupted my request terms on scantic security me refusing prisoners
when requesting on the Sgt communications chain the simply responded he agreed
with Lt Brisstow Sergent prujo came to work and said he a Chief of nasty
Itt with my pussy ass and my enverdments I then filed a grievance and he
admitted fault but verbally Antagonized joked about it

Administrative Remedies

a. are there an administrative remedies (Grievance Procedures YES ☑
b. highest Level    ☑ Yes
c.         Request Remedy to higher achey   ☑ Yes
d.    ☑ No    (Two steps [grievance]

Injury Severe medical harm and mental anguish

Count IIII

State the constitutional or other federal civil right that was violated

1 amendment rights

Count IIII identify the issue involved. Check only one. State additional issues in separate counts

☐ Basic necessities    ☒ mail    ☐ Access to the court    ☐ Medical care

☐ Disciplinary proceedings    ☐ Property    ☐ exercise of religion    ☐ Retaliation

☐ excessive force by an officer    ☐ threat to safety    ☐ Other _____

Supporting Facts. State as briefly as possible the facts supporting count IIII Describe exactly what each defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments

Feb 28, 2024 Do officer teransir brought me my legal mail that was already read open but was clearly attempted to be taped shut. i ask her did she do it she responded no. She did not. Sargent pralgo came and told me that he can't reveal who open it but that the situation was being inuated. I then begin to tell him i have a right to know that it should be accessible he responded no and that he would be the one to hold accountable. I then said you go consistently mess with my mail legal mail" when violates my 1-6-14th amendment rights he then responds it's not serious. i then respond it messes with my cases I begin tell him about casselaw refering to Nick V. pen zone and nordstrom V3 Ryan how my issue concerning my legal mail is supported by cases laws and now i am scared to have and send legal mail out and sent from my criminal attorney. Sargent pralgo then cuts me off and says tough Shit and that he has more work to do and he proceeds to walk off. i say your actions are arbitrary and capricous

b. administrative Remedies.

(a) are there any administrative remedies (grievance procedures or administrative appeals available at your institution?   ☒ yes

(b) Did you submit a request for administrative relief on count 1 to the highest level   ☐ yes

c Did you appeal your request for relief on count 1 to the highest level ?   ☐ no

d if you did not submit or appeal a request for administrative relief at any level briefly explain why you didn't.   Staff did not respond

How was injured

by severe emotical trauma and mental anguish and left feeling isolated

Cover Sheet

CV-23-403-Tuc-shr C psoT

This is a amendment complaint for the district court
in Tucson with Judge honorable rash. Count 1 is a
ongoing issue it is not a seprate issue. The was already
inform with prior motions

Jonathon Gaines

*bring Gaines back his copy with Respas*

# Cochise County Jail Inmate Grievance – Level One

To: ~~Sargent Prielgo~~    Received By: S. Laidlaw    Date/Time: 9/5/83

From: ~~Jonathon Gaines~~    279360    Sh-6    09/5/23
Inmate Name    Booking #    Pod/Cell #    Date

I. Grievance (To be completed by Inmate): Describe the reasons and nature for your complaint.

Approximately 3:20 - 3:30 i was being brought back from recyard upon being return to my cell- ofc K-cole Decided to purposly antagonize me by saying-her Gaines guess who gets to go home and watch amazon- netflix on a 65 inch TV me and not you!!

II. Grievance (To be completed by Inmate): Document reasonable attempts to resolve complaint informally prior to filing this formal grievance.

i have said plenty of times CCJ staff needs to hold their employee's Accoutable. to no avail i constently get ignored on this issue

III. Grievance (To be completed by Inmate): Explain your reasonable proposed resolution.

Sargent prielgo needs to hold K-cole Accoutable for her unprofessional- & Disrespectful and petty manner because this is a ongoing issue with her conduct behavior at CCJ She should not feel comfortable Doing that especially in front of a Superior of Co. I ~~deserve~~ a apolgy from her !!

~~Jonathon Gaines~~    09/5/23
Inmate Signature    Date

IV. Duty Officer's resolution (to be completed by duty officer prior to forwarding to Shift Supervisor):

_____

_____

_____

_____

_____    _____
Officer's Signature    Date

# Cochise County Jail Inmate Grievance – Level One

V.  Shift Supervisor's or assigned officer's action and receipt (informal): I have addressed the nature of the complaint of the above named inmate and have taken the following action:

Officer Kohls comments were unneccessary and inflammatory. But they were not against any policy. I spoke to her about the comments. How we do not deliberatly antagonize anyone.

_____ Supervisor's Signature        9/5/23 Date      Return a copy to inmate if resolved.

_____ File in "Grievance File" (informally resolved).      Tracking: 27-0216

__V__  Continue as a Formal Grievance

Jonathon (signed) Inmate Signature        09/5/23 Date

---

DATE RECEIVED: 9/6/23 _____        NUMBER: 27-0216 _____

VI.  Investigating Officer's Response (Formal): I have investigated the above grievance and have taken the following action:

Issue resolved. No further resolution required

_____ _____
_____ _____
_____ _____
_____ _____
_____ _____

Lt. Heisner Investigating Officer Signature        9/6/23 Date      Return a copy to inmate.

_____ Inmate Signature        _____ Date

---

TO INMATE: IF NOT SATISFIED WITH THE INVESTIGATING OFFICER'S RESOLUTION, SUBMIT A LEVEL-TWO GRIEVANCE APPEAL FORM WITHIN 3 DAYS OF RECEIPT TO THE JAIL COMMANDER.

# Cochise County Jail Inmate Grievance – Level One

*please gaines his copy back tode*
*given*

To: _Whom it may concern_   Received By: _F. Rueda_   Date/Time: _1/11/24_

From: _Jonathon Gaines_   _279360_   _NA-16_   _Jan 11, 2024_
     Inmate Name       Booking #       Pod/Cell #       Date

**I.** Grievance (To be completed by Inmate): Describe the reasons and nature for your complaint.

_NA pod has been Lock Down for a college fight that i had nothing to do with CCJ staff has took Disciplinary measures and has administer collective punishment to all inmates (including the ones that had nothing to do with it) CCJ handbook states Inmates—I have the right to Impartiality-page 2 and fairness — this action of theirs is a clear violation_

**II.** Grievance (To be completed by Inmate): Document reasonable attempts to resolve complaint informally prior to filing this formal grievance.

_I showed and told CCJ Staff where the hand book states They are not allowed to administer collective punishment They ignore that attempt and Threaten me with unJust harm anyway and now I am Lock Down - no hour out— because of their Disregard for rules and actual policy_

**III.** Grievance (To be completed by Inmate): Explain your reasonable proposed informal resolution.

_Please follow — by the book— actual policy_

_J(...)_   _Jan 11, 2024_
     Inmate Signature            Date

**IV.** Duty Officer's resolution (to be completed by duty officer prior to forwarding to Shift Supervisor):

_The NA lockdown is per LT Monge/Heisner. ~~Lock~~ Lockdown's are not grievable._

_F. Rueda_   _1/11/24_
     Officer's Signature            Date

This complaint has been resolved by the line officer or withdrawn by the inmate. _____ yes _J.G_ no (inmate initials)

_J(...)_   _Jan 11, 2024_
     Inmate Signature            Date

# Cochise County Jail Inmate Grievance – Level One

**V.** Shift Supervisor's or assigned officer's action and receipt (informal):  I have addressed the nature of the complaint of the above-named inmate and have taken the following action:

You have been instructed on how to appeal your classification. A request form will be provided if you need one.

_____ Ben ___ 0695 ___ 1/15/24 ___ Return a copy to inmate if resolved.
Supervisor's Signature                    Date

_____ Forward to Hearing Officer for File (informally resolved).                    Tracking # 24-0007

✓ _____ Forward to Hearing Officer as a Formal Grievance
_____ Jones _____ Jan 16, 2024 _____
Inmate Signature                    Date

---

**DATE RECEIVED:** _1/18/24_

**VI.** Investigating Officer's Response (Formal):  I have investigated the above grievance and have taken the following action:

Frivolous

_____ Sgt. C. Heisner _____ 1/18/24 _____ Return a copy to inmate.
Investigating Officer Signature                    Date

_____                    _____
Inmate Signature                    Date

---

**TO INMATE:** IF NOT SATISFIED WITH THE INVESTIGATING OFFICER'S RESOLUTION, SUBMIT A LEVEL-TWO GRIEVANCE APPEAL FORM WITHIN 3 DAYS OF RECEIPT TO THE JAIL COMMANDER.

*Please bring back gaines copy with written response*

# Cochise County Jail Inmate Grievance – Level One

To: _Only Sargent's and Above_    Received By: _SSG Nguyen_    Date/Time: _9/6/23 2051_

From: _Jonathon Gaines_    _279360_    _Sh-6_    _09/6/23_
Inmate Name    Booking #    Pod/Cell #    Date

I. Grievance (To be completed by Inmate): Describe the reasons and nature for your complaint.

_Approximately 6:09 - 6:16. Duty ofc Velasquez and natinl Guard ofc ngyen came and did a late walk, i was taking a number 2 on the toilet & NG ofc ngyen along with Duty ofc Velasquez proceeded to take my medical request and read it. i told him you cannot do that it's illegl it is against Hipaa Law"_

II. Grievance (To be completed by Inmate): Document reasonable attempts to resolve complaint informally prior to filing this formal grievance.

_I have been telling CCJ staff about issues like this for the longest to no avail they keep Doing what they want - Reference - Duty ofc Aguilar Grievance - 00167 - because neighter of these events did give my consent, permission_

III. Grievance (To be completed by Inmate): Explain your reasonable proposed resolution.

_Please follow policy, procedure, rules and Hipaa Law"_

_Jonathon Gaines_    _09/6/23_
Inmate Signature    Date

IV. Duty Officer's resolution (to be completed by duty officer prior to forwarding to Shift Supervisor):

_When I approached I heard him ask me "can you read it?". I wasn't aware until officer Velasquez informed me, that I was not to interact with medical request forms._

_[signature]_    _9/6/2023_
Officer's Signature    Date

# Cochise County Jail Inmate Grievance – Level One

V.  Shift Supervisor's or assigned officer's action and receipt (informal):  I have addressed the nature of the complaint of the above named inmate and have taken the following action:

The grievance above is frivolous and malicious in nature. National Guard SSgt. Nguyen reported he felt coerced into reading the medical request when inmate Gaines asked if the request was legible. If the contents of the Medical request form had any sensitive health information you did not wish to have disclosed to anyone except jail Medical staff, then it is highly advised you do not post such information outside of your cell door for anyone other than Medical to see. In either case, it is not the responsibility of jail staff or National Guard staff that you failed to disclose health information to anyone other than jail Medical staff.

_____    9-7-23    Return a copy to inmate if resolved.
Supervisor's Signature    Date

_____ File in "Grievance File" (informally resolved).    Tracking #: 23-0218

_____ Continue as a Formal Grievance

_____
Inmate Signature    Date

---

**DATE RECEIVED:** _____    **NUMBER:** _____

VI.  Investigating Officer's Response (Formal):  I have investigated the above grievance and have taken the following action:

_____

_____

_____

_____

_____

_____

_____

_____

_____ Return a copy to inmate.
Investigating Officer Signature    Date

_____
Inmate Signature    Date

---

**TO INMATE:** IF NOT SATISFIED WITH THE INVESTIGATING OFFICER'S RESOLUTION, SUBMIT A LEVEL-TWO GRIEVANCE APPEAL FORM WITHIN 3 DAYS OF RECEIPT TO THE JAIL COMMANDER.

# Cochise County Jail Inmate Grievance – Level One

*Give Gaines his copy with written response in a timely fashion*

To: Whom it may concern   Received By: SSG Nguyen   Date/Time: 9/12/23 2100

From: Jonathon Gaines   279360   Sh-6   09/12/23

Inmate Name   Booking #   Pod/Cell #   Date

I. **Grievance (To be completed by Inmate):** Describe the reasons and nature for your complaint.

CPl. Acuna has once again violated the grievance process in its entirety by insistantly telling SSgt. Nguyen to "intentionally, purposely, fabricate, falsify a conjured up response to MY grievance 23-0218 tonight i ask SSgt. Nguyen why did he lie on MY grievance 23-0218 thats when he proceded to tell me that his superios which would have been CPl Acuna at that date and time - told him to write that response. i then proceded to tell him i had a ofc check the camera to reafirm that i Did not speak-move my mouth at all nor react till he took MY

II. **Grievance (To be completed by Inmate):** Document reasonable attempts to resolve complaint informally prior to filing this formal grievance.

*medical request out of the door*

i have eventally, persistently tried to get CPl Acuna to be held accountable for not only his unprofesional malicious, vexatious, venomous actions but also his personal vendeta against me to no avail !!! currently i am at a lost because what more reasonably attempts can i make ??!  in the past he has express his dislike of me being mature in following the grievance prorcess

III. **Grievance (To be completed by Inmate):** Explain your reasonable proposed resolution.

he needs to be held accoutable for his unjust, un warrented, uncalled for actions because this type of behavior has gone out of control || which it should have never been encourage by his superios inactions. ps. follow policy-procedures

Jonathon Gaines   09/12/23

Inmate Signature   Date

IV. **Duty Officer's resolution (to be completed by duty officer prior to forwarding to Shift Supervisor):**

There was no coercion, CPl Acuna & SGT Cabas advised on the situation I found myself in. They told me to respond as I have not had to respond to a grievance prior to the previous grievance.

9/13/23

Officer's Signature   Date

# Cochise County Jail Inmate Grievance – Level One

V. Shift Supervisor's or assigned officer's action and receipt (informal): I have addressed the nature of the complaint of the above named inmate and have taken the following action:

— SSG Ngyuen was not coerced in any way on what to write in his responses. It was simply explained to him the process of responding to a grievance.

_____

_____

_____

_____    9-14-23    Return a copy to inmate if resolved.
Supervisor's Signature            Date

_____ File in "Grievance File" (informally resolved).    **Tracking #:** 23-0229

_____ Continue as a Formal Grievance

_____
Inmate Signature                        Date

---

DATE RECEIVED: _____        NUMBER: _____

VI. Investigating Officer's Response (Formal): I have investigated the above grievance and have taken the following action:

_____

_____

_____

_____

_____

_____

_____

_____    Return a copy to inmate.

_____
Investigating Officer Signature              Date

_____
Inmate Signature                        Date

---

**TO INMATE:** IF NOT SATISFIED WITH THE INVESTIGATING OFFICER'S RESOLUTION, SUBMIT A LEVEL-TWO GRIEVANCE APPEAL FORM WITHIN 3 DAYS OF RECEIPT TO THE JAIL COMMANDER.

*please bring copy back with response*

# Cochise County Jail Inmate Grievance – Level One

To: _Cpl. Romero_    Received By: _Rodriguez_    Date/Time: _2/25/24  1245_

From: _Jonathon Gaines_    _279360_    _sh-5_    _feb 25, 2024_
     Inmate Name        Booking #        Pod/Cell #        Date

I. Grievance (To be completed by Inmate): Describe the reasons and nature for your complaint.

_once again my Legal mail was already preopen prior to being in my presence on friday 23, of feb 2024 This has been the 5th time in Less then 4 to 3 months_

II. Grievance (To be completed by Inmate): Document reasonable attempts to resolve complaint informally prior to filing this formal grievance.

_Do Officer townsly brought me mail-Legal- that was already open, tampered with, tape on it ms townsly said she did not Do it i then proceeded to call my Attorney office and ask them did they send it Like that with tape on it, They responded no_

III. Grievance (To be completed by Inmate): Explain your reasonable proposed resolution.

_please stop messing with my properly mark Legal mail_

_Jw_
Inmate Signature               _feb 25, 2024_
                                 Date

IV. Duty Officer's resolution (to be completed by duty officer prior to forwarding to Shift Supervisor):

_Day Supervisor notified of situation. All Supervisors will be aware of situation to resolve this issue._

_Rodriguez_
Officer's Signature           _2/25/24_
                             Date

# Cochise County Jail Inmate Grievance – Level One

V.  Shift Supervisor's or assigned officer's action and receipt (informal):  I have addressed the nature of the complaint of the above named inmate and have taken the following action:

_____

_____

_____

_____

_____

_____  Return a copy to inmate if resolved.
Supervisor's Signature                        Date

_____  File in "Grievance File" (informally resolved).          Tracking # *24-0056*

_____  Continue as a Formal Grievance

_____
Inmate Signature                              Date

---

**DATE RECEIVED:** _____          **NUMBER:** _____

VI.  Investigating Officer's Response (Formal):  I have investigated the above grievance and have taken the following action:

_____

_____

_____

_____

_____

_____

_____

_____  Return a copy to inmate.
Investigating Officer Signature               Date

_____
Inmate Signature                              Date

---

**TO INMATE:**  IF NOT SATISFIED WITH THE INVESTIGATING OFFICER'S RESOLUTION, SUBMIT A LEVEL-TWO GRIEVANCE APPEAL FORM WITHIN 3 DAYS OF RECEIPT TO THE JAIL COMMANDER.

*bring Gaines two copies back*

# Cochise County Jail Inmate Grievance – Level One

To: _Only ofc Valasquez/cpl. Rubio_    Received By: _Velasquez_    Date/Time: _02/12/2024 @ 2326_

From: _Jonathon Gaines_    _279360_    _sh-5_    _Feb 12, 2024_
       Inmate Name        Booking #        Pod/Cell #        Date

**I.** Grievance (To be completed by Inmate): Describe the reasons and nature for your complaint.

Approx 8:30 - 7:06 ofc Valasquez brought me my Legal mail, that was already "cut open" without me being present ironically, the contents of the mail were pertaining to my civil complaint - Action - which involves a complaint about this issue. since it been open before because CCJ staff still consistently tampers with my Legal mail !!

**II.** Grievance (To be completed by Inmate): Document reasonable attempts to resolve complaint informally prior to filing this formal grievance.

I have talked with Do ofc Valasquez about this severe issue. he has inform me that the mail was already cut open and read before he receive it to bring it to me from the control room, I ask him he's have any idea who could have Done it? he responded NO, I then proceeded to tell him to please continue to be honest and write Down his verbal statement of this in his DO ofc response below

**III.** Grievance (To be completed by Inmate): Explain your reasonable proposed informal resolution.

This has been a consistent issue with CCJ staff - This should not be continued to be Look over!! I want the person who Done this to be held accountable !!
A copy of this Grievance will be sent off by mail to the District court to honorable Judge Rash, please Do not try to coerce, "advise" ofc Valasquez to be Dishonest

_[signature]_      _Feb 12, 2024_
Inmate Signature        Date

**IV.** Duty Officer's resolution (to be completed by duty officer prior to forwarding to Shift Supervisor):

How you received the mail is how it I was given it. I did not open the mail It was already open before hand

_Velasquez_        _02/12/24_
Officer's Signature        Date

This complaint has been resolved by the line officer or withdrawn by the inmate. _____ yes _J.G_ no (inmate initials)

_Jonothon W_        _02/13/24_
Inmate Signature        Date

# Cochise County Jail Inmate Grievance – Level One

**V.** Shift Supervisor's or assigned officer's action and receipt (informal): I have addressed the nature of the complaint of the above-named inmate and have taken the following action:

I am not aware of your legal mail being "consistently" mishandled. The mail was opened by mistake. The mail is not processed by floor officers. For the amount of legal mail making it's way to defendant, our track record is excellent. I am surry your mail was opened.

_____/0675     2/12/24     Return a copy to inmate if resolved.
   Supervisor's Signature               Date

_____Forward to Hearing Officer for File (informally resolved).     Tracking # 24-0032

_____Forward to Hearing Officer as a Formal Grievance

_____
   Inmate Signature                          Date

---

**DATE RECEIVED:** _____

**VI.** Investigating Officer's Response (Formal): I have investigated the above grievance and have taken the following action:

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

                                           Return a copy to inmate.

_____
   **Investigating Officer Signature**                   **Date**

_____
   **Inmate Signature**                           **Date**

---

**TO INMATE:** IF NOT SATISFIED WITH THE INVESTIGATING OFFICER'S RESOLUTION, SUBMIT A LEVEL-TWO GRIEVANCE APPEAL FORM WITHIN 3 DAYS OF RECEIPT TO THE JAIL COMMANDER.

# Cochise County Jail Inmate Grievance – Level One

*give being his copy with written response?*

To: Whom it may Concern    Received By: Ofc. Godlove    Date/Time: 10/05/23

From: B Gaines Jonathon        279360        ND.1        10.4.23
___Inmate Name___        ___Booking #___    ___Pod/Cell #___    ___Date___

**I. Grievance (To be completed by Inmate):** Describe the reasons and nature for your complaint.

MY legal mail was opened in front of and given to somebody who was/is obviously not me. When that person brought the mistake to staffs attention my legal mail was then retrieved by the shift supervisor CPL. Ballardos. I did not *by Godlove* receive it untill a few days afterwards ^missing papers and the envelope it was sent in, instead I received one single paper as if it was In-House mail & not legal mail.

**II. Grievance (To be completed by Inmate):** Document reasonable attempts to resolve complaint informally prior to filing this formal grievance.

I tried to resolve and broach the topic with cpl. Ballardos instead of being straightforward he deflected and denied any knowledge, then ultimately he admitted that he did indeed know about this mishap. Contradicting his initial lack of knowledge and proceed to be as vague as possible. Therefore I seen that the situation wasn't going to be resolved through him so ive sought other avenues and I find myself filing yet another grievance.

**III. Grievance (To be completed by Inmate):** Explain your reasonable proposed resolution.

All I ask for is accountability and responsibility to be accepted as well as acknowledgement this is a big issue is it not? One that should not be overlooked; I believe to do so would be more than negligent. I would like for the missing papers be giving to me. If they have been disposed of who ever disposed of them to be held accountable and for them to apologize personally for inflicting this avoidable unnecessary distress upon me. It was a mistake untill intentional acts followed

Jonathon Gaines                10.4.23
___Inmate Signature___            ___Date___

**IV. Duty Officer's resolution** (to be completed by duty officer prior to forwarding to Shift Supervisor):

At My level I am Unable to Resolve this grievance. I will forward your grievance to my Supervisor.

S__ M Godl__                10/05/23
___Officer's Signature___        ___Date___

# Cochise County Jail Inmate Grievance – Level One

V.  Shift Supervisor's or assigned officer's action and receipt (informal): I have addressed the nature of the complaint of the above named inmate and have taken the following action:

That was a mistake. The employee issues have been addressed. Unfortunately I cannot share how it was addressed as it is an employee issue. Although I was not personally involved, I apologize for any mistakes. But keep in mind, we didn't stuff the envelope.

_____ OGC _____ 10/10/23 _____ Return a copy to inmate if resolved.
Supervisor's Signature                     Date

_____ File in "Grievance File" (informally resolved).    As prime    Tracking #: 23-0264 .

_____ Continue as a Formal Grievance

_____
Inmate Signature                          Date

---

DATE RECEIVED: _____        NUMBER: _____

VI.  Investigating Officer's Response (Formal): I have investigated the above grievance and have taken the following action:

_____

_____

_____

_____

_____

_____

_____

_____

_____ Return a copy to inmate.
Investigating Officer Signature                Date

_____
Inmate Signature                          Date

---

**TO INMATE:** IF NOT SATISFIED WITH THE INVESTIGATING OFFICER'S RESOLUTION, SUBMIT A LEVEL-TWO GRIEVANCE APPEAL FORM WITHIN 3 DAYS OF RECEIPT TO THE JAIL COMMANDER.

THOMSON REUTERS
WESTLAW EDGE ○

Arizona State & Federal ...        can the county jail open inmate's            AZ (State & Fed.)

Mangiaracina v. Penzone                                          Related documents
United States Court of Appeals, Ninth Circuit  •  March 3, 2017  •  849 F.3d 1191  •  17 Cal. Daily Op. Serv. 1969  •  2017 Daily Journal D.A.R. 1978   (Approx....

Document        Filings (3)      Negative Treatment (3)      History (5)      Citing References (225      Table of Authorities      Fullscreen

☐        1 of 44 results        Original terms                          Go

| | |
|---|---|
| **Synopsis** | Declined to Extend by de Cruz v. Polanco, N.D. Cal., February 28, 2018 |
| | 🔗 Original Image of 849 F.3d 1191 (PDF) |
| West Headnotes | 849 F.3d 1191 |
| Attorneys and Law Firms | United States Court of Appeals, Ninth Circuit. |
| Opinion | Nick MANGIARACINA, Plaintiff-Appellant, |
| Concurrence | v. |
| All Citations | Paul PENZONE; Craig Garcia, named as: |
| Footnotes | Sgt. Garcia #A7747; Unknown Hansen, |

Notes

Quick
Check

Nick MANGIARACINA, Plaintiff-Appellant,
v.
Paul PENZONE; Craig Garcia, named as:
Sgt. Garcia #A7747; Unknown Hansen,
Officer of the MCSO; Eddie De La Rosa,
Sgt./A7779; Anthony Mank, Sgt./A4767;
John Beddome, Sgt./A4986; Jesse Nyland,
Inmate Classification/ A7875; Dean
Wagner, Inmate Classification/ A5441;
Unknown Harmon, named as Captain
Harmon; Unknown Garcia, named as Lt.
Garcia #A4226; Bill Williams, External
Reffern; Unknown Wade, named as BHO
Sgt. Wade; Unknown Parties, named as
John/Jane Does 1–10 Mesa Police
Department and John/Jane Does 1–100
County of Maricopa; Unknown Party,
named as MCSO BHO on Grevince #12-
03278; Maricopa County, County of
Maricopa John/Jane 1–100 Defendant;
Unknown Parties, John Doe #1, John Does
#3–14; Unknown Capanaro, Captain at 4th
Avenue Jail in April 2012; MCSO SMURC
Board, John and Jane Does 15–20,
Defendants-Appellees.

No. 14-15271
|
Argued and Submitted June 6, 2016, Seattle, Washington
|
Filed March 3, 2017

## Synopsis

**Background:** Pre-trial detainee brought § 1983 action in state court against jail employees, alleging they **opened** his legal **mail** outside his presence in violation of First and Sixth Amendment. Defendants removed action to federal court. Defendants moved to dismiss for failure to state a claim. The United States District Court for the District of Arizona, Neil V. Wake, J., D.C. No. 2:13-cv-00709-NVW-SPL, granted motion. Detainee appealed.

**Holding:** The Court of Appeals, Paez, Circuit Judge, held that prisoner alleged sufficient facts to state a claim for improper **opening** of his incoming legal **mail** in violation of Sixth Amendment.

Affirmed in part, reversed in part, and remanded.

Bybee, Circuit Judge, filed opinion concurring in the judgment.

**Procedural Posture(s):** On Appeal; Motion to Dismiss; Motion to Dismiss for Failure to State a Claim.

### West Headnotes (10)

| 1 | Federal Courts | | Federal Courts |
| --- | --- | --- | --- |
| | | 170B | Courts of Appeals |
| | Court of Appeals reviews de novo a district court's dismissal of a complaint under prisoner litigation screening statute for failure to state a claim, construing all facts in the light most favorable to the plaintiff. 28 U.S.C.A. § 1915A | 170BXVII | Scope and Extent of Review |
| | | 170BXVII(K) | |
| | | 170BXVII(K)2 | Standard of Review |
| | | 170Bk3619 | Substantive Matters |
| | | 170Bk3644 | Criminal Justice |
| | | 170Bk3644(3) | Imprisonment and incidents thereof |

6 Cases that
cite this
headnote

| | | | | |
|---|---|---|---|---|
| 2 | **Federal Courts** | | | |
| | | 170B | | Federal Courts |
| | Court of Appeals construes a pro se complaint liberally | 170BXVII | | Courts of Appeals |
| | | 170BXVII(K) | | Scope and Extent of Review |
| | | 170BXVII(K)2 | | Standard of Review |
| | | 170Bk3576 | | Procedural Matters |
| | 42 Cases that cite this headnote | 170Bk3587 | | Pleading |
| | | 170Bk3587(1) | | In general |

| | | | | |
|---|---|---|---|---|
| 3 | **Federal Civil Procedure** | | | |
| | | 170A | | Federal Civil Procedure |
| | Pro se complaints may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. | 170AXI | | Dismissal |
| | | 170AXI(B) | | Involuntary Dismissal |
| | | 170AXI(B)3 | | Pleading, Defects In, in General |
| | | 170Ak1773 | | Clear or certain nature of insufficiency |
| | 21 Cases that cite this headnote | | | |

| | | | | |
|---|---|---|---|---|
| 4 | **Criminal Law** | | | |
| | **Prisons** | 110 | | Criminal Law |
| | | 110XXXI | | Counsel |
| | Prisoners have a Sixth Amendment right to be present when legal mail related to a criminal matter is inspected. U.S. Const. Amend. 6. | 110XXXI(B) | | Right of Defendant to Counsel |
| | | 110XXXI(B)11 | | Deprivation or Allowance of Counsel |
| | | 110k1857 | | Consultation with counsel; privacy |
| | | 310 | | Prisons |
| | | 310II | | Prisoners and Inmates |
| | 98 Cases that cite this headnote | 310II(G) | | Access to Courts and Public Officials |
| | | 310k264 | | Communication with courts, officers, or counsel |

5    **Criminal Law**

**Prisons**

Pretrial
detainee
sufficiently
alleged that
two pieces of
legal **mail** were
**opened**
outside his
presence, as
required to
state a claim
for improper
**opening** of his
incoming legal
**mail** in
violation of
Sixth
Amendment;
for each of
these
incidents,
detainee
attached his
grievance form
and the
response he
received from
jail officials,
and alleged
that the first
piece of **mail**
had been
**opened** and
stapled shut
prior to
delivery and
that the
second had
been **opened**
and taped shut
prior to
delivery, and
jail officials
characterized
**opened mail**
as legal **mail**.
U.S. Const.
Amend. 6.

100 Cases that
cite this
headnote

6    **Criminal Law**

**Prisons**

| | | |
|---|---|---|
| 110 | Criminal Law |
| 110XXXI | Counsel |
| 110XXXI(B) | Right of Defendant to Counsel |
| 110XXXI(B)11 | Deprivation or Allowance of Counsel |
| 110k1857 | Consultation with counsel; privacy |
| | | |
| 310 | Prisons |
| 310II | Prisoners and Inmates |
| 310II(G) | Access to Courts and Public Officials |
| 310k264 | Communication with courts, officers, or counsel |

| | |
|---|---|
| 110 | Criminal Law |
| 110XXXI | Counsel |

|  |  |  |
|---|---|---|
| Isolated incidents of improper **opening** of an **inmate's** legal mail may, in appropriate circumstances, be sufficient to allege a Sixth Amendment violation. U.S. Const. Amend. 6 | 110XXXI(B) | Right of Defendant to Counsel |
|  | 110XXXI(B)11 | Deprivation or Allowance of Counsel |
|  | 110k1857 | Consultation with counsel; privacy |
|  | 310 | Prisons |
|  | 310II | Prisoners and Inmates |
|  | 310II(G) | Access to Courts and Public Officials |
|  | 310k264 | Communication with courts, officers, or counsel |

47 Cases that cite this headnote

**7    Prisons**

| Jails and prisons may impose certain restrictions on incoming mail, so long as the restrictions are reasonably related to legitimate penological interests. | 310 | Prisons |
|---|---|---|
|  | 310II | Prisoners and Inmates |
|  | 310II(A) | In General |
|  | 310k112 | Regulation and supervision in general; role of courts |
|  | 310 | Prisons |
|  | 310II | Prisoners and Inmates |
| 3 Cases that cite this headnote | 310II(B) | Care, Custody, Confinement, and Control |
|  | 310k144 | Mail and Correspondence |
|  | 310k146 | Incoming |

**8    Prisons**

| Court of Appeals defers to the judgment of corrections authorities, particularly with regard to matters of security, because it recognizes that running a prison or jail is an inordinately difficult undertaking | 310 | Prisons |
|---|---|---|
|  | 310I | In General |
|  | 310k105 | Judicial supervision, intervention, or review |

with which prison or jail authorities have particular expertise; this deference, however, only comes into play when the facility offers a legitimate justification for the challenged practice.

4 Cases that cite this headnote

9    **Federal Courts**

In reviewing a district court's decision on a defendant's motion to dismiss, Court of Appeals accepts all allegations of material fact as true and construes them in the light most favorable to the plaintiff.

15 Cases that cite this headnote

| | |
|---|---|
| 170B | Federal Courts |
| 170BXVII | Courts of Appeals |
| 170BXVII(K) | Scope and Extent of Review |
| 170BXVII(K)3 | Presumptions |
| 170Bk3664 | Pleadings; Dismissal |
| 170Bk3665 | In general |

10    **Criminal Law**

A criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense.

16 Cases that cite this headnote

| | |
|---|---|
| 110 | Criminal Law |
| 110XXXI | Counsel |
| 110XXXI(B) | Right of Defendant to Counsel |
| 110XXXI(B)11 | Deprivation or Allowance of Counsel |
| 110k1857 | Consultation with counsel, privacy |

2/14/24, 11:31 AM

Case 4:23-cv-00403-SHR    Document 14    Filed 04/10/24    Page 32 of 70
Mangiaracina v. Penzone | Cases | Arizona | Westlaw Edge

## Attorneys and Law Firms

**\*1192** Harry Williams IV (argued), Law Office of Harry Williams, Seattle, Washington, for Plaintiff-Appellant.

James Kenneth Mangum (argued), Deputy County Attorney; William G. Montgomery, County Attorney; Civil Services Division, Maricopa County Attorney's Office, Phoenix, Arizona; for Defendants-Appellees.

**\*1193** Corene Kendrick and Donald Specter, Prison Law Office, Berkeley, California; David M. Porter, Co-Chair, NADCL Amicus Committee, National Association of Criminal Defense Lawyers, Sacramento, California; for Amici Curiae National Association of Criminal Defense Lawyers, Arizona Attorneys for Criminal Justice, Prison Law Office, American Civil Liberties Union, and ACLU of Arizona.

Appeal from the United States District Court for the District of Arizona, Neil V. Wake, District Judge, Presiding, D.C. No. 2:13-cv-00709-NVW-SPL

Before: Richard A. Paez and Jay S. Bybee, Circuit Judges and Jon S. Tigar, [*] District Judge.

Concurrence by Judge Bybee

## OPINION

PAEZ, Circuit Judge:

Nick Mangiaracina appeals the dismissal of his First and Sixth Amendment claims arising from jail employees **opening** legal **mail** outside his presence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand.

### I.

At the time of the events described in the operative complaint (the third amended complaint), Nick Mangiaracina was incarcerated as a pre-trial detainee in Maricopa **County's** Fourth Avenue **Jail** in Phoenix, Arizona. The jail's stated policy is to **open** legal mail addressed to a prisoner only in the presence of that prisoner. *See* Maricopa **County** Jails, *Rules and Regulations for Inmates* § 17, at 24. [1] Mangiaracina alleged, however, that his **mail** was repeatedly **opened** "outside [his] presence" in contravention of this policy. [2] The complaint included

descriptions of nine specific instances of alleged improper **mail** opening.

Mangiaracina alleged that in September 2011, he received a letter from his attorney that had been "**opened** and taped shut." He further alleged that on March 23, 2012, he "**mailed** a [manila] envelope that was sealed to [his] attorney...." While an officer was sorting **mail** later that evening, Mangiaracina saw that his letter had been **opened**. Mangiaracina was then "allowed to reseal it and it was **mailed**."

On November 9, 2012, a jail employee **opened** an incoming letter from Mangiaracina's attorney. Mangiaracina attached the **mail** room's response to his grievance regarding the incident, which stated: "The mailroom documents any legal **mail** that come[s] in torn-**open** or damaged. According to our records you[r] legal **mail** was delivered to the 4th Ave. Jail sealed and un-**opened**." A second response from the jail stated that during **mail** distribution, "it was noted that **inmate** Mangiaracina's legal **mail** envelope had been cut **open** and stapled closed prior to it being delivered to [the Fourth Avenue Jail].... [T]he reason [it was **open**] was unknown" to the employee responding to the grievance, "as it had been delivered to [the Fourth Avenue Jail] that way for distribution."

**\*1194** Mangiaracina also described several incidents of improper **mail opening** in January 2013. He alleged that two outgoing letters to his attorneys were **opened** on January 9. With respect to one of these letters, Mangiaracina explained that he had complained to a correctional officer, who "said he knew about it and [said] it was de[a]lt with." Mangiaracina alleged that a few days later, an incoming letter from an attorney was improperly **opened**. On January 22, 2013, a jail employee again "**opened** a letter going out to [his] attorney."

According to the complaint, problems with the handling of Mangiaracina's legal **mail** persisted despite his repeated complaints and grievances. He alleged that on February 27, 2013, a jail employee "**opened** a letter going out to" his attorney. Finally, on March 12, 2013, a jail employee **opened** an incoming letter from an attorney. Mangiaracina attached his grievance related to the March 12 incident, which explained that the "legal **mail** was **opened** [and]

taped shut prior to delivery to inmate," and that it "came up in [the] mail that way." Mangiaracina received the same response from the mailroom that he had received with respect to the November 9, 2012 incident: "The mailroom documents any legal mail that come[s] in torn-open or damaged. According to our records you[r] legal mail was delivered to the 4th Ave. Jail sealed and un-opened." There was no further response explaining whether (or why) the mail was opened at the jail prior to delivery.

In Mangiaracina's complaint, he further alleged that he had "[six] pending trials in superior court[ ] and [one] federal case pending." [3] In describing his injury resulting from the improper opening of his legal mail, Mangiaracina alleged that he and his two "attorneys are af[ ]raid to communicate by mail which is hard as I have so many cases and so much pap[ ]erwork to go back and forth." He further explained that his "right to confidentiality and privacy was violated" and that his "defense strategy and [his] rights in general were just shredded." Mangiaracina also reported that an officer had told him that "they can open [legal mail] outside our presence if they want to," that "there is no law against it," and that "they just do it in our presence as a [courtesy]."

Mangiaracina initially filed suit in Arizona superior court pursuant to 28 U.S.C. § 1983, alleging violations of his First and Sixth Amendment rights by a number of jail employees and John Doe defendants. Defendants removed the case to federal court. The district court found that removal *1195 was proper and dismissed the original complaint for failure to state a claim, but granted Mangiaracina leave to amend. After a series of amendments, the court ultimately dismissed Mangiaracina's Third Amended Complaint with prejudice. The district court noted that Mangiaracina had failed to specifically allege that the pieces of mail were marked as "legal mail" and that, for most of the instances, he failed to explain how he knew the mail was opened outside his presence. The court acknowledged that Mangiaracina did provide additional details for the incidents occurring in September 2011, on March 23, 2012, and on November 9, 2012. The court concluded, however, that even assuming the three items were properly marked as legal mail, these

"isolated incidents" did not violate Mangiaracina's constitutional rights. Mangiaracina timely appealed.

II.

<u>1</u>    <u>2</u>    <u>3</u>    We review de novo a district court's dismissal of a complaint under 28 U.S.C. § 1915A for failure to state a claim. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). We construe all facts in the light most favorable to the plaintiff, and we construe a pro se complaint liberally. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). "Pro se complaints ... may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation marks omitted).

III.

A.

Mangiaracina argues that the district court erred in dismissing his Sixth Amendment claim. We reverse the district court's dismissal of this claim as to two counts of illegal **mail opening** and affirm the dismissal of the remaining counts.

The Supreme Court addressed the inspection of prisoners' legal **mail** in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff*, a group of prisoners challenged, inter alia, a prison regulation that authorized correctional officers to **open** and inspect all incoming **mail** for contraband. The regulation included legal **mail** but provided that such **mail** was to be inspected in the presence of the prisoner to whom it was addressed. The plaintiffs argued that legal **mail** should be exempted from the inspection requirement entirely. The Court held that "inspection or perusal" of legal **mail** was permissible. *Id.* at 576, 94 S.Ct. 2963. In the Court's view, the challenged regulation could not have the effect of "chill[ing attorney-client] communications, since the **inmate's** presence insures that prison officials will not *read* the **mail**." *Id.* at 577, 94 S.Ct. 2963 (emphasis added). Because the **inmate's** presence adequately protected any rights at stake, the Court did not identify the constitutional source or scope of these rights. *Id.* at 575–77, 94 S.Ct. 2963.

We recently addressed prisoners' legal **mail** rights in *Nordstrom*, 762 F.3d 903. In that case, a prisoner alleged that he had written a letter to his criminal attorney and

that a correctional officer, instead of inspecting the letter in Nordstrom's presence before sealing and sending it, stood in front of him and read the letter. We held that this event, though isolated, sufficiently alleged a violation of Nordstrom's Sixth Amendment right to counsel. Although the case concerned improper reading rather than improper **opening** of legal **mail**, we noted that "the practice of requiring an **inmate** to be present when his legal **mail** is **opened** is a measure designed to *prevent* officials from reading the **mail** in the first place." *Id.* at 910 (citing *Wolff*, 418 U.S. at 577, 94 S.Ct. 2963); *see also Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended on denial of rehearing by* \*1196 135 F.3d 1318 (9th Cir. 1998) (declining to decide "whether **mail** clearly sent from a lawyer to an **inmate** but lacking the 'Legal **Mail**' designation may be **opened** outside the presence of the **inmate**"); *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) (recognizing that "the relevant event for purposes of analyzing [the defendant's] culpability is the alleged constitutional injury, the guard's **opening** of the letter outside [the prisoner's] presence."). Thus, we have recognized that prisoners have a Sixth Amendment right to confer privately with counsel and that the practice of **opening** legal **mail** in the prisoner's presence is specifically designed to protect that right.

4   Other circuit courts have similarly recognized the importance of this practice. In 🕮 *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006), the Third Circuit recognized, in the context of a First Amendment challenge, that **opening** legal **mail** outside the addressee's presence

> deprives the expression of confidentiality and chills the **inmates**' protected expression, regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications. This is so because the only way to ensure that **mail** is not read when **opened** is to require that it be done in the presence of the **inmate** to whom it is addressed.

🕮 *Id.* (internal quotation marks, alteration, and citation omitted). The Sixth Circuit has similarly acknowledged

that a "prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process" and has determined that "[t]here is no penological interest or security concern that justifies **opening** such mail outside of the prisoner's presence when the prisoner has specifically requested otherwise." *Sallier v. Brooks*, 343 F.3d 868, 877–78 (6th Cir. 2003); *see also, e.g.,* Al-Amin v. Smith, 511 F.3d 1317, 1331 (11th Cir. 2008) ("[I]nmates have a constitutionally protected right to have their properly marked attorney **mail opened** in their presence."). The same concerns animate Mangiaracina's Sixth Amendment challenge, which is predicated on the chilling of his protected communications with criminal attorneys. *See Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) ("[O]pening properly marked legal **mail** alone, without doing more, implicates both the First and Sixth Amendments because of the potential for a 'chilling effect.' " (quoting *Sallier*, 343 F.3d at 877)). We therefore now clarify that, under *Nordstrom*, prisoners have a Sixth Amendment right to be present when legal **mail** related to a criminal matter is inspected.

**B.**

5    Mangiaracina has alleged sufficient facts to state a claim for improper **opening** of his incoming legal **mail** on November 9, 2012 and March 12, 2013. For each of these incidents, Mangiaracina attached his grievance form and the response he received from jail officials. For the November 9 incident, the response confirmed that the **mail** had been delivered to the jail sealed but had been **opened** and stapled shut prior to delivery to Mangiaracina. For the March 12 incident, Mangiaracina specifically alleged in his grievance that the letter had been "**opened** [and] taped shut prior to delivery." The allegations in the complaint and attached documents sufficiently allege that these two pieces of **mail** were **opened** outside Mangiaracina's presence. In the two responses from the facility, jail officials characterize both pieces of **mail** as "legal **mail**." At the pleading stage, these allegations are sufficient to allege that the envelopes were properly marked as legal **mail**. Further, Mangiaracina alleges that he was informed by an officer that jail employees "can **open** [legal **mail**] outside our presence if they want to," that *1197 there is no law against it, and that "they just do it in

our presence as a [courtesy]." These two counts therefore sufficiently allege violations of Mangiaracina's right to have his confidential, properly-marked legal mail opened in his presence. For the remaining counts, the district court correctly determined that Mangiaracina failed to allege that the mail was properly marked as legal mail, so these counts were properly dismissed.

6    The absence of a clear pattern beyond these two incidents does not preclude relief. In *Nordstrom*, we recognized that even a single instance of improper reading of a prisoner's mail can give rise to a constitutional violation. Thus, even isolated incidents of improper mail opening may, in appropriate circumstances, be sufficient to allege a Sixth Amendment violation. *Cf. Merriweather*, 569 F.3d at 317 (6th Cir. 2009) ("Two or three pieces of [a prisoner's legal] mail opened in an arbitrary or capricious way suffice to state a [First Amendment] claim.").

Defendants argue that this case is distinguishable from *Nordstrom* because Mangiaracina does not allege that jail officials ever *read* his mail. But indeed, how could he? If the practice of opening legal mail in the presence of the prisoner is designed to prevent correctional officers from reading it, then the natural corollary is that a prisoner whose mail is opened outside his presence has no way of knowing whether it had been (permissibly) inspected or (impermissibly) read. In other words, Mangiaracina could not in good faith have alleged that jail employees had read his mail, since he had no basis for knowing what had happened to his mail prior to delivery. *See* Scott Dodson, *New Pleading, New Discovery*, 109 Mich. L. Rev. 53, 54 (2010) ("[P]laintiffs proceeding with claims that depend upon facts exclusively in the hands (or minds) of defendants and third parties may find themselves in a Catch-22: plaintiff needs those facts to plead her claim properly and survive a 'Twiqbal' motion to dismiss, but she may not be able to discover those facts without first surviving the motion to dismiss.").

*Nordstrom* presented the rare situation in which a prisoner actually witnessed a correctional officer open and read his legal mail. To hold that an officer could stop short of a prisoner's cell, open and read a letter, and then deliver it to

the prisoner without giving rise to an actionable claim would elide the central holding of *Nordstrom.*

7    8    Nor do Defendants identify any legitimate penological interest that would be served by **opening** legal **mail** outside Mangiaracina's presence. Jails and prisons may impose certain restrictions on incoming **mail**, so long as the restrictions are "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *see Thornburgh v. Abbott,* 490 U.S. 401, 413–14, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). We defer to the judgment of corrections authorities, particularly with regard to matters of security, because we recognize that "[r]unning a prison [or jail] is an inordinately difficult undertaking" with which prison or jail authorities have particular expertise. *Turner,* 482 U.S. at 84–85, 107 S.Ct. 2254. This deference, however, only comes into play when the facility offers a legitimate justification for the challenged practice. "[I]f the prison fails to show that the regulation is rationally related to a legitimate penological objective, we do not consider the other factors" of the *Turner* test. *Ashker v. California Dep't of Corr.,* 350 F.3d 917, 922 (9th Cir. 2003).

Here, the stated policy of the Maricopa **County Jails** is to **open** all legal **mail** in the presence of the prisoner, and Defendants have identified no reason in their briefing **\*1198** for deviating from this policy. No special deference is therefore required. *See* Al-Amin, 511 F.3d at 1331 (11th Cir. 2008) ("[O]pening an **inmate's** attorney **mail** in his presence ... 'fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests.' " (quoting *Turner,* 482 U.S. at 91, 107 S.Ct. 2254)).

9    Nevertheless, Defendants attempt to argue on appeal that any deviations were isolated and accidental. We have already explained why even isolated incidents may support a Sixth Amendment claim. *See* Part III.B, *supra.* Additionally, whether an isolated incident was also accidental is a question of fact that we do not resolve on a motion to dismiss. At this stage, we accept all allegations of material fact as true and construe them in the light most favorable to the plaintiff. *Nordstrom,* 762 F.3d at 908.

10    As we have emphasized in the past, "[a] criminal defendant's ability to communicate candidly and

confidentially with his lawyer is essential to his defense." *Nordstrom*, 762 F.3d at 910. Mangiaracina alleged that jail officials had repeatedly **opened** his legal **mail** and that an officer had told him that "there is no law against" **opening** legal **mail** before delivering it to a prisoner and "they just do it in [the prisoner's] presence as a courtesy." Mangiaracina was justifiably concerned that his attorney-client communications would not be kept confidential. As a result, Mangiaracina and his attorneys were "af[ ]raid to communicate by **mail**," which he described as "hard as I have so many cases and so much paperwork to go back and forth." By necessity, prisoners and pre-trial detainees rely heavily on the **mail** for communication with their attorneys. The Maricopa **County jail** system does not allow incoming phone calls or provide access to e-**mail**, and outgoing phone calls can only be placed as collect calls. *See* Maricopa **County Jails**, *Rules and Regulations for Inmates* § 25, at 35. Moreover, as Mangiaracina noted in his complaint, criminal cases often involve paperwork that can only feasibly be transported by **mail**. As Mangiaracina put it, his "right to confidentiality and privacy was violated as well as [his] defense strategy and [his] rights in general were just shredded." These allegations are sufficient to state a claim for violation of Mangiaracina's Sixth Amendment right to counsel.

C.

Mangiaracina also argues that the district court erred in dismissing his First Amendment claim. In *Hayes v. Idaho Correctional Center*, No. 14-35078, 849 F.3d 1204, 2017 WL 836072 (9th Cir. Mar. 3, 2017), filed concurrently with this opinion, we held that the First Amendment protects prisoners' right to have legal **mail opened** in their presence. Accordingly, we reverse the dismissal of Mangiaracina's First Amendment claim, and we remand to the district court for consideration of this claim in light of *Hayes*, if necessary.

* * *

For the reasons set forth above, we reverse the district court's dismissal of Mangiaracina's Sixth Amendment and First Amendment claims with respect to the incidents on November 9, 2012 and March 12, 2013. We affirm the district court's dismissal of the remaining counts of alleged improper **mail** opening.

The judgment is AFFIRMED in part, REVERSED in part, and REMANDED.

Each party shall bear its own costs on appeal.

BYBEE, Circuit Judge, concurring in the judgment:

I concur in the conclusion in Part III.A of the majority opinion, that prisoners have a general Sixth Amendment right to be present when legal mail related to a **\*1199** criminal matter is inspected. I write separately because I don't think the majority has explained with sufficient clarity what is required to state a Sixth Amendment claim under 42 U.S.C. § 1983. I am deeply concerned that the majority opinion's characterization of *Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014), and out-of-circuit cases which dealt with either intentional acts or pattern-and-practice allegations, Maj. Op. at 1195–96, may mislead the district courts and the parties into thinking that merely negligent conduct is sufficient to state a claim under 42 U.S.C. § 1983. It is not. If it was once not clear, it is now beyond question that § 1983 requires proof of intentional, not merely negligent, acts depriving a party of his constitutional rights. [1]

I

In *Paul v. Davis*, the Supreme Court rejected the notion that § 1983 had converted "the Fourteenth Amendment [into] a font of tort law to be superimposed upon whatever systems may already be administered by the States." 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). It was easier to say than to enforce, and the Supreme Court had its own missteps in determining what kind of constitutional torts § 1983 covers. In 1977, the Court granted certiorari in ⚖ *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), to decide whether prison officials' negligent handling of a prisoner's outgoing **mail** could be the basis for damages under § 1983. The Court never got there; instead, it decided the case on the basis of qualified immunity and left to another day the critical question of whether § 1983 covered negligent conduct. ⚖ *Id.* at 559 n.6, 98 S.Ct.

855 (1978). *See Baker v. McCollan*, 443 U.S. 137, 138, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (explaining how *Procunier* dodged the question). Two years later, in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Court considered whether § 1983 was a proper vehicle to compensate a prisoner under the Due Process Clause for a negligent loss of his property. The Court said that "the alleged loss, even though negligently caused, amounted to a deprivation" and was actionable under § 1983.    *Id.* at 536–37, 101 S.Ct. 1908. Five years later, the Court overruled    *Parratt* in *Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). This time the Court concluded that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328, 106 S.Ct. 662. The Court stated that "lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law." *Id.* at 332, 106 S.Ct. 662. "Our Constitution," the Court wrote, "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Id.* Nevertheless, the Court would "not rule out the possibility that there are other constitutional provisions that would be violated by mere lack of care." *Id.* at 334, 106 S.Ct. 662.

Notwithstanding the Court's reservation of judgment, *Daniels*'s logic has since been extended, amendment by amendment, to other fundamental rights protected by the *1200 Bill of Rights. And, so far as I can determine, no court has held that a § 1983 claim can be proved by mere negligent conduct. For example, in the First Amendment free exercise context, negligence on the part of a government official is not enough to show a violation of constitutional rights sufficient to state a claim for relief under § 1983. *See Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (dismissing § 1983 claim because "an isolated act of negligence would not

violate an inmate's First Amendment right to free exercise of religion"); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause."); *Lewis v. Mitchell*, 416 F.Supp.2d 935, 944 (S.D. Cal. 2005) (holding more than negligence is required to state a valid § 1983 claim for violation of prisoner's First Amendment right to freely exercise religion); *Shaheed v. Winston*, 885 F.Supp. 861 (E.D. Va. 1995) (finding "defendants [sic] actions were negligent, not intentional, and the plaintiffs may not rely on § 1983 as a basis for this claim"), *aff'd on other grounds*, 161 F.3d 3 (4th Cir. 1998) (unpublished).

Similarly, in access-to-court cases, also under the First Amendment, the circuit courts have uniformly held that negligence is not sufficient to raise a claim under § 1983. The Seventh Circuit, for example, has found that "a mere isolated incident of negligence ... does not rise to the level of a constitutional violation actionable under section 1983." *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992); *see also Crawford-El v. Britton*, 951 F.2d 1314, 1318 (D.C. Cir. 1991) (holding that intentional interference with access to court violates Constitution); *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995) (holding that negligent conduct in misrouting a form does not violate the First Amendment's right to petition).

In the Fourth Amendment context, the Supreme Court has held that "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. Cty. of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (citations omitted). The Supreme Court found support for this holding in the text of the Fourth Amendment, since seizure does not imply an "unknowing act," as well as the history of the Fourth Amendment, which was addressed to " 'misuse of power,' not the accidental effects of otherwise lawful government conduct." *Id.* (citation omitted). The Court elaborated:

[I]f a parked and unoccupied police car slips its brake and pins a passerby against a wall, it is likely that a tort has occurred, but not a violation of the Fourth Amendment. And the situation would not change if the passerby happened, by lucky chance, to be a serial murderer for whom there was an outstanding arrest warrant—even if, at the time he was thus pinned, he was in the process of running away from two pursuing constables. It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

*Id.* at 596–97, 109 S.Ct. 1378. We have similarly held that to state a Fourth Amendment claim against a government investigator for submitting false and material |*1201 information in a warrant affidavit, "a § 1983 plaintiff must show that the investigator 'made *deliberately* false statements or recklessly disregarded the truth in the affidavit' and that the falsifications were 'material' to the finding of probable cause." *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (emphasis added) (citation omitted).

In the Eighth Amendment context, the Supreme Court has found that more then negligence is required to raise a claim for cruel and unusual punishment. *Wilson v. Seiter*, 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In *Estelle*, the Supreme Court rejected an Eighth

Amendment claim based on inadvertent failure to
provide adequate medical care:

> [A] complaint that a physician has been
> negligent in diagnosing or treating a
> medical condition does not state a valid
> claim of medical mistreatment under
> the Eighth Amendment. Medical
> malpractice does not become a
> constitutional violation merely because
> the victim is a prisoner. In order to state
> a cognizable claim, a prisoner must
> allege acts or omissions sufficiently
> harmful to evidence deliberate
> indifference to serious medical needs.

429 U.S. at 107, 97 S.Ct. 285. In *Wilson*, the Court
added that " '[i]t is *only* such indifference' that can
violate the Eighth Amendment; allegations of
'inadvertent failure to provide adequate medical
care' or of a 'negligent … diagnos[is]' simply fail to
establish the requisite culpable state of mind." 501
U.S. at 297, 111 S.Ct. 2321 (quoting *Estelle*, 429 U.S. at
105–06, 97 S.Ct. 285) (alteration in original) (citations
omitted).

These same considerations should inform our
judgment about the Sixth Amendment right to be
present when legal mail related to a criminal matter
is inspected. There is nothing about the attorney-
client relationship that suggests that merely
inadvertent conduct that touches on that
relationship is a constitutional violation. The
courthouse custodian who accidentally walks in on
an attorney-client conference may "chill" their
conversation, but—without more—has done nothing
actionable under § 1983. Similarly, the mail clerk
who accidentally opens legal mail, seals it up, and
notes "opened by mistake, and not read" has not
violated the Sixth Amendment, even if the prisoner-
recipient is unhappy to receive his mail in that
format. If the prisoner doubts the veracity of the mail
clerk, or has seen a broad pattern of improperly
opened legal mail, the prisoner should allege that

the act is intentional or that an inference of intent should be drawn from the pattern and practice. To fail to recognize the importance of alleging intentional conduct would be to risk strict liability claims under § 1983, something no court has ever approved.

II

Applying the above principles to Mangiaracina's claim, Mangiaracina has alleged a "policy and practice" of illegally **opening inmates mail**. He alleged at least four instances where his legal **mail** was **opened** outside his presence and that prison employees stated they can **open** legal **mail** outside the prisoner's presence "if they want to" and there is "no law against it." These are sufficient facts to allege a constitutional violation at the pleading stage of the litigation for the **opening** of Mangiaracina's incoming legal **mail** on November 9, 2012 and March 12, 2013.

A

The majority opinion focuses on whether the *number* of incidents was sufficient to state a cause of action but overlooked the *1202 question of the *nature* of the incidents alleged. The opinion concludes that two incidents in four months "sufficiently allege" violations of Mangiaracina's Sixth Amendment right to counsel, [2] and "[t]he absence of a clear pattern beyond these two incidents does not preclude relief." Maj. Op. at 1197. To reach this conclusion, the opinion relies heavily on our recent decision in *Nordstrom* for the proposition that a "single instance" of improper reading of a prisoner's **mail** can give rise to a constitutional violation. Maj. Op. at 1197 (citing *Nordstrom*, 762 F.3d 903). However, the single incident in *Nordstrom* was sufficient because it "was not simply a one-time mistake or confusion over the contours of the [prision] policy ... the [prison d]irector ha[d] personally informed [Nordstrom] that prison officials are permitted to read his legal **mail**." *Nordstrom*, 762 F.3d at 911–12. There, as our opinion noted, the prison officials **openly** read Nordstrom's **mail** in front of him and over his protests. *Id.* at 906. And, the prison's response to the prisoner's grievance was not that this was a mere accident or an isolated instance of reading legal **mail**, but rather that its

policy permitted guards to read legal mail as long as it was done in the prisoner's presence. *Id.* at 907 (noting that the prison director's response to grievance reasoned that "[s]taff is authorized to scan and is not prohibited from reading the mail to establish the absence of contraband and ensure the content of the mail is of legal subject matter" (alteration in original)). The prison regulations, in fact, prohibited reading outgoing attorney-client correspondence. *Id.* at 910–11. *Nordstrom* is consistent with the principle that § 1983 covers only intentional acts affecting constitutional rights.

The majority opinion concludes that "even isolated incidents of improper mail opening may, in appropriate circumstances, be sufficient to allege a Sixth Amendment violation." Maj. Op. at 1197. The majority does not outline what such "appropriate circumstances are," but proceeds to quote the holding in *Merriweather v. Zamora*, 569 F.3d 307, 318 (6th Cir. 2009), that "[t]wo or three pieces of [a prisoner's legal] mail opening in an arbitrary or capricious way suffice to state a [Sixth] Amendment claim." Maj. Op. at 1197 (alteration in original). I regret that the majority has introduced an "arbitrary or capricious" standard into the evaluation of § 1983 claims under the Sixth Amendment. That standard is well-known in the administrative law context, where it is prescribed by statute, 5 U.S.C. § 706(2)(A), but it is not a familiar standard for judging constitutional torts. The majority borrows the phrase from the Sixth Circuit, where it apparently originated in 🌐 *Parrish v. Johnson*, 800 F.2d 600 (6th Cir. 1986). *See* 🌐 *id.* at 604 ("[T]his case concerns Turner's arbitrary **opening** and reading of Giles' personal mail.... A capricious interference with a prisoner's incoming mail based upon a guard's personal prejudices violates the First Amendment."). But we shouldn't mistake "arbitrary and capricious" conduct in this context as something less than "intentional conduct." The case that gave us the unfortunate phrase, 🌐 *Parrish*, involved intentional conduct: the prisoner, who was paraplegic, "testified that [a prison guard] would randomly **open** and read his personal |*1203 **mail** and that [the guard] would also taunt him by waving

the open mail in front of him." *Id.* at 603. The court observed that the case did not involve "a regularly applied regulation ... or a random interference with a prisoner's mail." *Id.* at 604. *Parrish* involved an allegation that the defendant had intentionally violated the prisoner's rights. Other Sixth Circuit cases, which have continued to use the imprecise "arbitrary and capricious" language, also involve allegations of intentional or pattern-and-practice conduct. *See, e.g., Merriweather*, 569 F.3d at 317 (finding that sixteen instances of improperly opened legal mail were sufficient to state a cause of action); *Sallier v. Brooks*, 343 F.3d 868, 872, 879–80 (6th Cir. 2003) (upholding a damage award where the prisoner could prove that officials had deliberately opened three pieces of legal mail and the prisoner "had filed a written request to have such mail opened only in his presence"); *Lavado v. Keohane*, 992 F.2d 601, 610 (6th Cir. 1993) (holding it was sufficient that the prisoner alleged that a Bureau of Prisons employee had "blatant disregard for established regulations [that gave] rise to an inference of arbitrary or capricious action" and noting that the prisoner had alleged that defendant "read Lavado's properly marked correspondence and proceeded to give Lavado his business card so Lavado would be able to spell his name correctly when Lavado sued"); *Reneer v. Sewell*, 975 F.2d 258, 259–60 (6th Cir. 1992) ("[I]f the mail was actually read, and this action was motivated by retaliation as plaintiff alleges, such behavior by prison officials might [be] ... arbitrary action ..."). The decisions cited by the majority from other circuits are not to the contrary. *See, e.g., Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008) (finding prisoner alleged "pattern and practice of opening ... clearly marked attorney mail"); *Jones v. Brown*, 461 F.3d 353, 359–60 (3d Cir. 2006) (noting prison policy required officials to open all mail outside the presence of prisoners in order to screen for anthrax and "[a] state pattern and practice, or, as is the case here, explicit policy, of opening legal mail outside the presence of the addressee inmate" violates constitutional rights); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[A]n

isolated incident of **mail** tampering is usually insufficient to establish a constitutional violation. Rather, the **inmate** must show that prison officials 'regularly and unjustifiably interfered with the incoming legal **mail**.' " (citations omitted)).

I wish the majority had simply stated the obvious for the benefit of the parties and the district court: in order to survive a motion to dismiss—much less prevail on the merits—the plaintiff must allege some kind of deliberate action on the part of prison officials. An allegation that prison officials **opened** a prisoner's legal **mail**, without an allegation that the **mail** was deliberately and not negligently **opened**, is not sufficient to state a cause of action under § 1983.

B

The opinion concludes that Mangiaracina has alleged sufficient facts to state a claim for two instances of improper legal **mail opening** (November 9, 2012 and March 12, 2013). In both instances, the prison responded to Mangiaracina's grievance by noting the **mail** had been delivered from the off-site **mail** room to the Fourth Avenue Jail, where he was housed, "sealed and un-**opened**." Mangiaracina alleges that sometime between delivery to the jail and delivery to Mangiaracina's pod, the **mail** was improperly **opened** "in the jail somewhere **mail** does not get **opened**." The prison could not provide a reason it was **opened**.

These allegations, by themselves, are not sufficient to state a cause of action **\*1204** under § 1983. In the end, however, I join the majority in concluding that Mangiaracina has said enough at this stage of the proceedings to allege a constitutional tort. As the majority explains, Mangiaracina also pled that his legal **mail** continually gets **opened** and, in response to his grievance, an officer told him "they can **open** [legal **mail**] outside [a prisoner's] presence if they want to." The officer said "there is no law against it[,] they just do it in [the prisoner's] presence as a courtesy." The official's statements indicate the conduct was "not simply a one-time mistake or confusion over the contours of the [Maricopa] policy." *Nordstrom*, 762 F.3d at 911. Although Maricopa **County Jails** rules and regulations comply with the

requirements of today's holding, Maj. Op. at 1193, that written policy alone is insufficient if prison staff are intentionally ignoring that policy since it is just "a courtesy" and not the "law." Showing a "blatant disregard for established regulations" is sufficient to raise an inference of intentional conduct to survive a motion to dismiss. *Lavado*, 992 F.2d at 611.

At this stage in the litigation, we must accept all allegations of material fact as true and construe them in the light most favorable to the plaintiff. *Nordstrom*, 762 F.3d at 908. Construing Mangiaracina's pro se complaint liberally, I conclude that Mangiaracina has sufficiently claimed that someone is intentionally, rather than merely accidentally, **opening** his legal **mail** in violation of his Sixth Amendment rights. He may or may not be able to prove his claim, but he has said just enough to get the opportunity.

On that basis, I concur in the judgment.

## All Citations

849 F.3d 1191, 17 Cal. Daily Op. Serv. 1969, 2017 Daily Journal D.A.R. 1978

## Footnotes

*    The Honorable Jon S. Tigar, District Judge for the U.S. District Court for the Northern District of California, sitting by designation.

1    We take judicial notice of the Maricopa **County Jails** Rules and Regulations for Inmates, as the document is "not subject to reasonable dispute" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see United States v. Thornton*, 511 F.3d 1221, 1229 n.5 (9th Cir. 2008) (taking judicial notice of a federal Bureau of Prisons policy statement). Relevant portions of the regulations are contained in Appendix 1 to the Replacement **Opening** Brief and Exhibit 1 to the Brief of Amici Curiae National Association of Criminal Defense Lawyers, Arizona Attorneys for Criminal Justice, Prison Law Office, American Civil Liberties Union, and ACLU of Arizona.

2    In reviewing an order dismissing a complaint for failure to state a claim, we accept all allegations of material facts as

2/14/24, 11:31 AM

Mangiaracina v. Penzone | Cases | Arizona | Westlaw Edge

Case 4:23-cv-00403-SHR    Document 14    Filed 04/10/24    Page 51 of 70

true, and we construe the facts in the light most favorable to the plaintiff. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

3    We grant Defendants' motion to take judicial notice of the six criminal indictments pending against Mangiaracina in Maricopa County Superior Court at the time of the incidents. We also grant Defendants' motion to take judicial notice of the docket sheet in the criminal case in the United States District Court for the District of Arizona in which Mangiaracina was sentenced in February 2006 to seventy-eight months of imprisonment and thirty-six months of supervised release. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (internal quotation marks and citation omitted)).

It is not clear from the record whether the federal case that Mangiaracina referred to in his complaint was related to his prior conviction. Defendants do not contest that Mangiaracina's six pending trials in Superior Court were criminal trials, nor do they contest that Mangiaracina's correspondence with his attorneys was related to his state or federal criminal cases. If on remand and after discovery, it becomes clear that some of Mangiaracina's legal correspondence was civil in nature, the district court can address any incidents related to civil legal mail in light of Mangiaracina's First Amendment claim. *See* Part III.B, *infra*.

1    Portions of this concurrence are identical to portions of my concurrence in the companion case, *Hayes v. Idaho Correctional Center*, No. 14-35078, 849 F.3d 1204, 2017 WL 836072 (9th Cir. 2017). This case addresses the Sixth Amendment right to be present when legal mail is inspected by prison guards; Hayes addresses the First Amendment right to be present. The principles are nearly the same, and my concerns are the same.

2    The majority notes Defendants have not offered "any legitimate penological interest that would be served by" opening Mangiaracina's legal mail. Maj. Op. at 1197. However, the test created in *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254 (1987), was directed at prison *regulations*. *Id.* at 89, 107 S.Ct. 2254. I am not sure how the test even applies to inadvertent conduct. What penological reason can the State offer if someone opened the letter by mistake? The opinion thus strongly suggests that mistake or inadvertence is not a legitimate penological reason. If so, Mangiaracina's claim nearly sounds in strict liability.

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

## Related documents

https://1.next.westlaw.com/Document/I8901cd20008011e7b79af578703ae98c/View/FullText.html?navigationPath=Search%2Fv1%2Fresults%2Fna...    26/27

Case 4:23-cv-00403-SHR    Document 14    Filed 04/10/24    Page 52 of 70

| Selected topics | Secondary Sources | Briefs | Trial Court Documents |

Federal Courts
Courts of Appeals
    De Novo District review of Dismissal of Plaintiff's
    Complaint

Prisoners and Inmates
    Regulation of Incoming and Outgoing Prison Mail
    Processing of Inmate Mail

Contact us  ·  Live chat  ·  Training and support  ·  Improve Westlaw Edge/Report an error  ·  Transfer My Data
  ·  Pricing guide  ·  Sign out
1-800-REF-ATTY (1-800-733-2889)

Westlaw Edge. © 2024 Thomson Reuters    Accessibility  ·  Privacy  ·  Supplier terms                    *Thomson Reuters is not providing professional advice*

# Prison Rape Elimination Act

### And

# Sexual Assault Awareness



**Cochise County**

**Sheriff's Office**

**Detention Division**

---

**If you have been a victim of sexual violence any of the following can occur:**

- Contracting diseases
- Physical and medical complications
- Emotional turmoil
- Post traumatic Stress Disorder
- Depression and thoughts of suicide
- Disapproval from family members and loved ones
- Personal discomfort with their own actions
- Altered development of attitudes toward self, sexuality and relationships
- Poor personal boundaries with others or increased promiscuity
- Substance abuse and addiction, low self-esteem or self-hatred
- Shame
- Feelings of powerlessness, mistrust, betrayal, fear, guilt or humiliation.
- You also may be susceptible to further victimization.

**More facts you should know.**

- Rape and sexual assault happens to females and males of all ages, from infancy to the senior years.
- 98% of males who have raped boys reported they are heterosexual. Most males who assault men or women are married or report having girlfriends.
- Sexual assault has nothing to do with the victim's present or future sexual orientation. Victims may be either heterosexual or homosexual.
- A victim is not at fault for the rape, even if she/he was in a secluded area, or had previous consensual sex with the attacker.

---

- The fact a male victim of sexual assault ejaculated or become sexually aroused does not mean they were not raped or that they gave consent. These are normal, involuntary physiological reactions.

It is common for victims of sexual assault to have feelings of embarrassment, anger, guilt, panic, depression, and fear even several months or year after the attack. Other common reactions include loss of appetite, nausea or stomach aches, headaches, loss of memory and/or trouble concentrating and changes in sleep patterns.

**Do not hesitate to seek the support of a trusted friend, family member, Human Resource Counselor, Jail Medical, the chaplain or the victim services coordinator.**

The Prison Rape Elimination Act (PREA) of September 4, 2003, was enacted by congress to address the problem of sexual assault in all U.S. penal facilities.

The Act supports the elimination, reduction and prevention of sexual assault and rape within correctional systems; mandates national data collection; provides funds for programs and research; creates a national commission to develop standards and accountability measures; applies to all federal & state prisons, county jails, detention centers, police & sheriff stations, private and community residential facilities.

**PREA applies to Offender-on-Offender and Staff-on-Offender sexual misconduct as well as private prison and contracted staff, official visitors or volunteers.**

Sexual assault as defined by state law and CCSO Detention Division Policy is "A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person without consent of such person."

**In a confinement setting sexual assault occurs in such incidents as:**

- Completed, attempted, threatened or requested touching of the genitalia, anus, groin, breast, inner thigh, pubic area or buttocks.
- Exposing genitalia, anus, groin, breast, inner thigh, pubic area or buttocks or
- Photographing, videotaping, filming, digitally recording or otherwise viewing – with or without a device, an inmate or offender, while the inmate or offender is in a state of undress or partial undress, or while the inmate or offender is urinating or defecating.

**Reporting Sexual Violence:**

- If the attack just happened get to a safe place.
- Report the attack to a staff member immediately. The longer you wait to report the attack the more difficult it is to obtain the evidence necessary for a criminal and/or administrative investigation.
- Do not shower, brush your teeth, use the restroom, or change your clothes. You may destroy important evidence.
- Request immediate medical attention. You may have serious injuries that you are not aware of, and any sexual contact can expose you to sexually transmitted diseases.
- Reporting the assault verbally to any staff member, in writing, anonymously, or by third party if you choose.
- A full medical examination of you will be conducted.
- You will be separated from your attacker(s) and staff will remain with you.
- An investigation will be conducted and the assault will be prosecuted.
- Your identity and dignity will be protected to the fullest extent possible.

**It is also against the law for probation, parole, or community corrections officers to become sexually involved with offenders on release status. In addition, probation, parole, or community corrections officers should not attempt to engage in any acts of a sexual nature with offenders assigned to their caseload.**

Sexual assault affects everyone, either directly or through the experiences of those we care about. It is not only a women's issue as it can affect persons of any gender, age, race, ethnic group, socioeconomic status, sexual orientation, or disability.

**Remember...**
The only way rape can be prevented is when a potential rapist chooses not to rape. However, you may avoid an attack by keeping the following in mind:

- Be aware of situations that make you feel uncomfortable. Trust your instincts. If it feels wrong, LEAVE.
- Don't let your manners get in the way of keeping you safe. Don't be afraid to say "No" or "STOP IT NOW."
- Walk and stand with confidence. Many rapists choose victims who look like they won't fight back or are emotionally weak.
- Avoid talking about sex, and casual nudity. These things may be considered a come on, or make another inmate believe that you have an interest in a sexual relationship.
- Do not accept commissary items or gifts from other inmates. Placing yourself in debt to another inmate can lead to the expectation of repaying the debt with sexual favors.
- Avoid secluded areas. Position yourself in plain view of staff members. If you are being pressured for sex, report it to an officer or supervisor immediately.

COCHISE COUNTY JAIL
INMATE RULES AND REGULATIONS
TABLE OF CONTENTS

INTRODUCTION..............................................................................................................2
MISSION STATEMENT...................................................................................................2
INMATE RIGHTS AND PRIVILEGES.........................................................................2
EXPECTED BEHAVIOR AND CONDUCT - DISCIPLINARY ACTION.................7
GRIEVANCE PROCEDURES.........................................................................................7
    A.   Inmate Notification.........................................................................7
    B.   Informal Resolution.........................................................................7
    C.   Formal Resolution...........................................................................8
    D.   Filing of Grievances and Time Limitations..................................8
    E.   Inmate Copy.....................................................................................8
    F.   Emergency or Sensitive Complaints..............................................9
    G.   Grievance Appeals..........................................................................9
    H.   Prohibition of Retribution.............................................................9
TOBACCO FREE FACILITY..........................................................................................9
U.S. MAIL.........................................................................................................................10
PACKAGES AND PARCELS...........................................................................................10
ITEMS BROUGHT BY THE PUBLIC - PACKAGES..................................................10
COMMISSARY..................................................................................................................10
FAMILY VISITATION.....................................................................................................11
ATTORNEY VISITS.........................................................................................................12
MEDICAL SERVICES......................................................................................................13
INMATE UNIFORMS - DRESS CODE...........................................................................13
FOOD SERVICE................................................................................................................13
LEGAL FORMS.................................................................................................................14
HOUSING/CLASSIFICATION ASSIGNMENTS..........................................................14
PERSONAL HYGIENE.....................................................................................................14
HOUSING UNIT SANITATION......................................................................................14
DETENTION LIEUTENANT INSPECTION..................................................................14
INMATE BED MAKING...................................................................................................14
ROOM FURNITURE.........................................................................................................14
LOCKDOWN......................................................................................................................15
SAFETY AND SECURITY...............................................................................................15
HEADCOUNTS..................................................................................................................15
SEARCHES AND INSPECTIONS...................................................................................15
INMATE SEARCHES........................................................................................................15
CONTRABAND..................................................................................................................15
RECREATION....................................................................................................................15
TELEPHONES....................................................................................................................15
LAUNDRY..........................................................................................................................15
INMATE PROPERTY.......................................................................................................15
PROPERTY - TRANSFER TO ARIZONA DEPARTMENT OF CORRECTIONS....16
TELEVISION......................................................................................................................16
COMMUNICATIONS.......................................................................................................16
PERSONAL MESSAGES FOR INMATES.....................................................................16
NON - DISCRIMINATION...............................................................................................16
RESEARCH........................................................................................................................16
INMATE RIGHTS.............................................................................................................16
CHAPLAIN SERVICES....................................................................................................17
RED LINE VIOLATIONS - RESTRICTED AREA.......................................................17

**\*\*ANY INMATE THAT DESTROYS DEFACES, OR TAMPERS WITH ANY COUNTY EQUIPMENT, WILL BE HELD
FINANCIALLY RESPONSIBLE FOR THE FAIR MARKET VALUE OF THE EQUIPMENT - NO MATTER WHAT THE
VALUE. AN INMATE'S COMMISSARY FUNDS ARE SUBJECT TO BEING FROZEN BY THE JAIL COMMANDER
PENDING THE OUTCOME AND DISPOSITION OF A DISCIPLINARY HEARING OR COURT ACTION.**

May 2018

**COCHISE COUNTY JAIL**
203 North Judd Drive
Bisbee, Arizona 85603

## INTRODUCTION

The Cochise County Jail (CCJ) utilizes a concept of incarceration which appreciates your needs and the needs of the community. Our responsibility is for your safety during your stay. Your responsibility is to comply with the regulations and directives of this facility and of its staff. Some regulations may seem restrictive to you; however, they are necessary to maintain a secure and humane environment.

No handbook can cover all points, issues, or questions that inmates might have. Throughout this handbook you will find information, rules, and guidelines which will be useful to you during your stay. The rules and guidelines are designed to provide an orderly and safe place for you to live. Most requests, questions, needs, and requirements can be met by the detention staff.

## MISSION STATEMENT

The mission of the Cochise County Jail is to protect the public and facility through the incarceration of adult and juvenile offenders that meet statutory and constitutional standards of care and provide program opportunities intended to reduce incarceration.

## INMATE RIGHTS AND PRIVILEGES

You have the right to humane treatment with respect, impartiality, and fairness.

You shall be informed of the rules, procedures, and schedules concerning that which directly affects you within this facility.

You have the right to freedom of religious affiliation and voluntary religious worship.

You have the right to proper health care, nutritious meals, clean bedding and clothing, the opportunity for regular showers, proper ventilation, regular exercise, toiletries, and medical and dental treatment.

You have the right to correspond with your family and friends, and to correspond with members of the news media, in keeping with the facility rules and schedules.

You may be afforded the privilege, if eligible, to participate in personal visitation, education, and work opportunities, as resources are available and in keeping with your interests, needs, custody status, and abilities.

## EXPECTED BEHAVIOR AND CONDUCT - DISCIPLINARY ACTION

It is our expectation you will comply with behavioral guidelines while incarcerated. In general, our expectations are that you will:

1.  Follow staff directives and requests even if you do not agree with them;
2.  Respect jail property and the property of others;
3.  Maintain your sleeping area and surrounding communal (common) area in a clean, orderly and sanitary fashion;
4.  Maintain daily personal hygiene habits; and
5.  Behave in a rational and adult manner.

Unacceptable behavior will result in you being charged with a violation of in-house rules, or possible criminal violation.

A.  The jail will maintain, publish and issue to each inmate a clear, comprehensive set of rules which specify prohibited behavior. The rules explain the required standard of conduct, define behavior that violates these rules, and show the penalty for proven violations. Each inmate charged with a rule violation is assured, freedom from excessive punishment, treatment that preserves individual dignity, and a hearing before an impartial person. The inmate will be given the opportunity to appeal findings on major violations. If the inmate is found not guilty, the file will clearly show the not guilty finding.

B.  A system for handling rule violations will be maintained and reviewed at least annually by the Jail Commander. New and revised rules will be issued to each inmate during the intake process.

C.  Inmate disciplinary hearings will be held by an impartial staff member. Inmates will not be subjected to any form of discipline by other inmates.

D.  The purposes of this policy are as follows:
1.  Maintain security and control;
2.  Ensure fair and consistent disciplinary practices;
3.  Promote positive inmate behavior.

E.  The Detention Lieutenant will be advised in writing whenever the sanctions imposed on an inmate from two or more hearings result in a cumulative total of 30 days or more in disciplinary administrative segregation and/or 60 days or more of privilege loss. The Detention Lieutenant will review the incidents and sanctions and either approve or reduce the sanctions.

F.  The jail's disciplinary system recognizes and provides for disposition of lesser inmate infractions that are more appropriately dealt with informally by a detention officer. For minor violations, an inmate may receive an informal hearing upon request.

G.  Disposition of Minor Rule Violations
1.  All detention officers are authorized to informally dispose of minor rule violations. Resolution of a minor infraction includes advising the inmate verbally and in writing of the action that was a violation of the rules, and what sanction proportionate to the offense is recommended. Class II offenses may be charged as a major or minor violation at the discretion of the Duty Supervisor.

H.  Minor Sanctions Inmates - Class III Offenses
1.  Inmates are subject to one or more of the following sanctions:
a.  Verbal counseling, warning or written reprimand;

b. Loss of commissary, not to exceed seven days;

c. Loss of one outdoor recreation period(s);

d. Room restriction for one full custody day;

e. Denial for up to three days of the specific activity abused (i.e. Programs, group counseling, telephone, etc.);

f. Suspended sanction and probation not exceeding 30 days.

2. When room restriction is imposed, it will be proportioned to the offense. Attendance at group religious services and programs that are not court ordered will not be permitted during room restriction periods.

3. Room Restriction - Room restriction consists of the inmate being restricted to the assigned sleeping room and pod hygiene area. Failure to observe room restrictions can result in additional charges and additional restriction time. Inmates on room restriction are subject to the following rules:

a. No television privileges;

b. One hour of dayroom privileges for every 72 consecutive hours of Room Restriction (shower and exercise);

c. No personal telephone privileges – except for preapproved legal telephone calls.

4. The third minor violation in 30 days is treated as a major violation. Inmates are expected to continue participating in assigned tasks as usual, including scheduled clean up, and maintenance of their sleeping area in compliance with sanitation standards (i.e., bunk made, and floor swept and mopped).

5. Redline violations will result in a minimum 48 hour lockdown.

J. Minor Violation Waiver or Request for Hearing

1. The inmate may accept the sanction recommended by the officer by signing a waiver of hearing form, or the inmate may request a minor hearing. All agreement waivers signed by inmates will be reviewed by the supervisor by the conclusion of their duty shift. The supervisor will review the situation, the waiver, and officer's disposition.

The supervisor may concur with the officer when signing the form or may impose a modification to include up to 72 hours of room restriction.

2. The inmate can request a hearing instead of signing the hearing waiver. The waiver form will show the inmate refused the detention officer's elected sanction. The shift supervisor will be notified of his refusal. The supervisor will conduct an informal hearing with the inmate including the following:

a. Review the officer's minor incident report;

b. Evaluate relevant facts and statements made by the inmate;

c. Question witnesses;

d. Decide whether the inmate is guilty and impose a sanction appropriate to the offense. The supervisor may impose up to 72 hours of room restriction.

3. Based on the limited sanctions that can be imposed, the decision of the supervisor is final. Minor hearings by the supervisor will not include 24 hours notice before the hearing, staff assistance, or right to appeal findings.

K. Minor Violation Process - Class III Offense

1. Charging the Inmate with a Minor Violation

a. The Minor Violation Incident Report and Minor Violation Waiver forms are the forms that document the charge(s).

b. The detention officer will complete information on the form, including:

1) Inmate name;

2) Inmate booking number;

3) Inmate housing assignment;

4) Incident location;

5) Date and time of incident;

6) Rule violated and description of incident;

7) Sanction recommended.

c. The detention officer will advise the inmate of the rule violation and the sanction recommended. The inmate may sign the "Inmate Waiver" and check the box in agreement or may disagree and check the box to request a hearing.

d. The charging detention officer will complete the "Officer Disposition" portion of the form, checking the area indicating the inmate either accepted the disposition or refused and asked for a hearing. The officer will sign the form and enter the date and time.

e. If the inmate has requested a hearing, the detention officer will contact the supervisor and advise the supervisor that the inmate has asked for a hearing.

f. Before the end of the shift, the supervisor will review the written report, speak with the inmate, and ask the inmate if he or she pleads guilty or not guilty.

g. The inmate may ask the supervisor to talk to witnesses. The supervisor will decide which and how many witnesses he will question, based on what relevancy their testimony would have, as stated by the charged inmate. The supervisor may decline to question witnesses if their testimony would be irrelevant. The charged

inmate will advise the supervisor what questions he or she wants asked of the witness(es). The inmate will not ask any direct questions of any witness. The supervisor will question the witnesses out of the immediate presence of the charged inmate. If a requested witness is not immediately available for questioning (out at court, etc.), the supervisor will decide if the hearing should be delayed to obtain information from this witness by considering what information the witness could provide, the length of delay needed, and other considerations.

    h.    Based on the inmate's statements, information from the charging detention officer, the plea entered, and information from other witnesses, the supervisor will find the inmate guilty or not guilty. The supervisor will tell the inmate what the decision is and advise the inmate what sanction will be imposed.

    i.    The inmate will NOT be given 24 hours notice prior to the hearing; the inmate does NOT have the right to appeal the findings or the sanction. The inmate will be provided assistance by staff or another inmate ONLY if a translator is needed.

    j.    Completed Incident Reports and Minor Violation Forms are forwarded with other daily shift paperwork at the end of each shift and handled the same way as other Incident Reports. (Reviewed by the Detention Lieutenant, logged for statistical purposes, and filed by Classification.)

L.    Disciplinary Hearings Officer
    Class I and Class II Offenses

    1.    All Class I Offenses require a disciplinary hearing. Class II offenses may be charged as a major or minor violation at the discretion of the Duty Supervisor. All inmates pending a disciplinary hearing shall be placed on room restriction until the hearing. Class II offenses may be charged as a major or minor violation at the discretion of the Duty Supervisor.

    2.    The purposes for assigning a specific hearing officer are:
        a.    Maintain consistency in handling the disposition of rule violations;
        b.    Ensure impartiality of the person conducting hearings;
        c.    Ensure that all related policies and procedures are followed during the disciplinary process.

    3.    The hearing officer will:
        a.    Ensure that all appropriate policies and procedures are adhered to regarding the disciplinary hearing process;
        b.    Receive all incident reports and charge sheets involving major rule violations from detention supervisors;
        c.    Maintain the disciplinary hearing log book by recording each formal charge and disposition;
        d.    Review each charge sheet and incident report upon receipt to ensure that:
            1)    The inmate has received proper notification within required time limits.
            2)    Reports clearly show a rule violation.
            3)    The inmate was advised, in writing, of the action which resulted in a rule violation charge.
        e.    Forward a written notice to the charged inmate, showing the time, date and place of the scheduled disciplinary hearing at least 24 hours before the hearing;
        f.    Conduct a disciplinary hearing within 72 hours of the delivery of written notice of a rule violation to the inmate, excluding weekends and holidays. Hearings may be postponed for a reasonable length of time, if necessary. Full credit will be given for the time spent in segregation during continuance;
        g.    When criminal charges regarding the incident are pending or possible, the hearing officer will advise the inmate, prior to beginning the hearing, of his or her right to seek legal counsel prior to giving any statement about the incident;
        h.    All disciplinary hearings that involve or potentially involve criminal charges will be tape recorded. The tape will be retained during the time that an in-house appeal may be filed or processed, before being forwarded to the Jail Commander. Tapes not forwarded will be held by the classification officer for two years from the date of the hearing;
        I.    At the start of the hearing, the hearing officer will explain to the inmate his rights;
        j.    If a guilty finding is made, the hearing officer will ensure that the recommended sanction is imposed correctly;
        k.    If an inmate is found not guilty or charges are dismissed or reversed, the inmate's file will clearly reflect the dismissal or finding of not guilty;
        l.    The inmate will be informed of his or her right to appeal the hearing decision on an Inmate Grievance Form addressed to the Detention Lieutenant. The appeal must be filed within three days of the time the inmate was verbally notified of the finding. A decision on the appeal will be made and conveyed to the inmate within 10 days of receipt of the written appeal;
        m.    Within 24 hours of the hearing, the inmate will be advised of his or her option to present documentary evidence provided allowing the inmate to do so is not unduly hazardous to facility safety;
        n.    The hearing officer will read all incident reports filed relating to the charge against the inmate unless they contain information that may jeopardize the safety or security of the facility or others.

M.    Responsibilities of Staff Member Holding the Hearing
    1.    Conduct a fair and impartial hearing.

2. Ensure rights of the inmate.
3. Keep current on inmate disciplinary requirements by reviewing current legal mandates and detention standards to ensure continuing compliance with legal mandates.
4. Hear testimony and review evidence from the accused inmate and staff.
5. Ensure complete and accurate documentation of the hearing and sign the hearing form.
6. If an inmate is not English-speaking, provide an interpreter to translate during the hearing process.
7. Designate a staff member to assist an inmate if he or she cannot effectively collect and present evidence. No staff member will sit in on a hearing involving an incident they witnessed or in which he or she was involved. Designated staff members may decline if they feel they are unable to be unbiased, objective, or they cannot provide competent assistance to the inmate. A substitute will be selected to conduct the hearing if the scheduled staff member feels he or she cannot be unbiased and objective.
8. At any time during the hearing, if appropriate, request a continuance to gather additional testimony. A continuance will not extend more than eight calendar days.
Should the accused inmate be in administrative segregation in a pre-disciplinary status, the Detention Lieutenant will be advised of the need for a continuance. The inmate may write a request that he or she be returned to general population. The request should be written on an Inmate Grievance Form addressed to the attention of the Detention Lieutenant. The decision of the Detention Lieutenant will be made based on the behavior of the inmate and the need for continued separation from general population. The decision will be made with input from the Jail Commander. That decision is final and not subject to appeal.

*Bingo* →

9. If a particular rule violation allegedly committed by an inmate may constitute a criminal offense, advise the inmate. The advisement will be tape-recorded along with the inmate's verbal acknowledgment. The inmate will not be penalized for invoking the option to remain silent, and silence will not be interpreted as an indication of guilt. Notify the Detention Lieutenant of the incident and the rule violation.
10. Ensure that every inmate formally charged has the opportunity to appear in person at his or her hearing, unless the inmate waives attendance in writing, refuses to attend, or displays behavior which is assaultive, threatening, or otherwise makes his or her presence unfeasible due to the threat posed to other inmates, staff, or the security and order of the facility. The inmate's absence will be documented and become part of the hearing file.
11. If an inmate refuses to attend the hearing, hold the hearing as scheduled, and make findings based on the evidence available.
12. Make a finding based upon substantiated evidence and testimony presented.
13. Recommend a sanction in a finding of guilty that is proportionate to the offense committed. In no instance recommend or impose a sanction that exceeds the guidelines shown in the Inmate Handbook.
14. Provide the accused inmate with a written copy of findings, basis for the findings, and the recommended sanction(s).
15. Ensure that during the disciplinary process, and any subsequent sanction imposed, no inmate is subjected to cruel and unusual punishment, including:
    a. Corporal punishment;
    b. Use of force, except when necessary for self-defense to ensure the safety of staff, inmates, or to prevent an escape;
    c. Deprivation of light, ventilation, heat, food, hygienic necessities, clothing, bedding, mail, adequate sanitation, or access to legal counsel and the courts, or his or her representatives;
    d. Any act or lack of care that may injure or impair the health of the inmate;
    e. Infliction of mental distress, degradation, or humiliation;

N. Major Sanctions Applicable to Inmates
Class I and Class II Offenses
1. Inmates are subject to one or more of the following sanctions:
    a. Verbal counseling, warning, or written reprimand;
    b. Loss of commissary or personal visitation, not to exceed seven days;
    c. Loss of one outdoor recreation period;
    d. Room restriction for up to 72 hours;
    e. Separate confinement, not to exceed 15 days;
    f. Suspended sanction and probation not exceeding 30 days;
    g. Denial for up to three days of the specific activity abused.
2. Room Restriction - Room restriction consists of the inmate being restricted to the assigned sleeping room and pod hygiene area. Failure to observe room restrictions can result in additional charges and additional restriction time. Inmates on room restriction are subject to the following rules:
    a. No television privileges;
    b. One hour of dayroom privileges for every 72 consecutive hours of Room Restriction (shower and exercise);
    c. No personal telephone privileges.

May 2018                                                  5

O.    Rule Infractions

Infractions of the following rules by inmates, subjects them to disciplinary actions, and possible criminal prosecution.

Class I Offenses:

1-01.    Murder or attempted murder: No inmate shall commit murder or attempt to commit murder;

1-02.    Assault:  No inmate shall fight with or without weapons, or instigate a fight, or assault another person, or threaten any other person;

1-03.    Extortion: No inmate shall offer or give gifts, personal services, favors, money, or anything else of value to any person as a bribe, or for protection;

1-04.    Rape: No inmate shall commit rape;

1-05.    Escape:  No inmate shall plan or attempt an escape, aid any other inmate in an escape or attempt, or be in the possession of escape paraphernalia;

1-06.    Arson:  No inmate shall start or feed a fire;

1-07.    Explosive:  No inmate will be in the possession of an explosive or ammunition;

1-08.    Weapon:  No inmate will be in the possession of a gun, firearm, knife or unauthorized sharpened instrument;

1-09.    Drugs:  No inmate will be in the possession of drugs or drug paraphernalia not authorized by medical staff;

1-10.    Sex Acts:  No inmate shall demand, threaten or in any other way encourage any person to participate in homosexual or any other sexual behavior or activity;

1-11.    Riot:  No inmate shall participate in any group demonstration, disturbance, riot, strike, work stoppage or work slow down.  No inmate may incite others to riot by conveying any inflammatory or mutinous communication by voice, written, sign, symbol or gesture;

1-12.    Stolen Property:  No inmate shall steal, be in possession of, or use another person's property (including property issued by the jail staff);

1-13.    Mask:  No inmate shall wear a disguise or mask;

1-14.    Tampering with Devices:  No inmate shall tamper, block or lock life support and fire control systems or devices, plumbing, electrical, recreation, communication systems, or air vents.  Nor shall inmates destroy, deface, alter, or damage jail property or buildings;

1-15.    Counterfeit any government document, money, or official paper:  No inmate shall possess, or attempt to counterfeit any government document, money, or official paper;

1-16.    Safety:  No inmate shall commit any other act which constitutes a threat to the security of the facility, its staff, or other inmates;

1-17.    Hostage:  No inmate shall individually, or in participation with others, take and/or hold a staff member, or any person hostage, or in any way restrain, hold, or confine any person;

1-18.    Attempt to commit any of the above offenses or assist another to commit any of the above acts;

1-19.    Any repeated commission of the Class II Offense, where it has been demonstrated that lesser sanctions have been ineffective, may be punished as a Class I Offense.

Class II Offenses:

2-01.    Fighting:  No inmate shall fight anyone;

2-02.    Threat:  No inmate shall threaten another with bodily harm, or any offense against his person or property;

2-03.    Sexual Acts not involving threat or force: No inmate shall participate in sexual acts;

2-04.    Misuse of authorized medication:  No inmate shall possess, manufacture or be under the influence of any drug or medicinal substance not prescribed and issued by the medical staff of the jail, or store medication for later use;

2-05.    Money:  No inmate shall possess money or unauthorized negotiable such as credit cards or checks;

2-06.    Loan of property to others for profit:  No inmate shall loan property to others for profit;

2-07.    Property:  No inmate shall possess unauthorized county property or stolen property;

2-08.    Intoxicants:  No inmate shall possess or manufacture unauthorized beverages, intoxicants or drugs, or be under the influence of the same;

2-09.    Theft of property:  No inmate shall steal others property;

2-10.    Gathering:  No more than three (3) inmates will be allowed to gather in a single room;

2-11.    Absence from Work:  No inmate shall have an unauthorized absence from work or assignment;

2-12.    Unauthorized Area:  All inmates shall proceed directly to their destination when leaving or returning to their housing unit after completion of activities.  No inmate is allowed in unauthorized areas;

2-13.    Insubordination:  No inmate shall be insubordinate or disrespectful to Detention or Cochise County staff members;

2-14.    Disobeying:  No inmate shall refuse to work, or disobey a direct verbal or written order given by any staff member;

2-15.    Destruction:  No inmate shall willfully destruct county property;

2-16.    Visitation:  No inmate shall violate any visitation regulations;

2-17.    False Information:  No inmate shall give false information or file a false report, including information about a medical condition, to any staff member, or hinder any investigation;

2-18. Disorderly Conduct: No inmate shall display disorderly conduct;

2-19. Contraband: No inmate shall make, possess, or smuggle contraband;

2-20. Mail: No inmate shall violate mail regulations (which includes receiving or sending mail to or from another inmate);

2-21. Head Count: All inmates shall be in their cells for head count times and other times as directed by Detention Staff;

2-22. Wrist Bands: No inmate will remove, alter, or tamper with issued Identification wrist bands.

2-23. Telephone: No inmate shall attempt to make third party telephone calls from the Inmate Telephone System.

2-24. Attempt to commit any of the above offenses or assist another to commit any of the above acts;

2-25. Any repeated commission of the Class III Offense, where it has been demonstrated that lesser sanctions have been ineffective, may be punished as a Class II (Major) Offense.

Class III Offenses:

3-01. Clothing: No inmate shall possess unauthorized clothing, or extra clothing - to include excess clothing;

3-02. Property: No inmate shall deface or misuse of county property (uniforms, linen, towels.);

3-03. Waste of Food: Only foods purchased in the commissary will be permitted in the rooms.

3-04. Hygiene: No inmate shall fail to keep himself/herself reasonably clean by failure to shower or wash;

3-05. Sanitation: No inmate shall fail to keep his/her assigned cell, bunk, or his/her property in a clean and orderly manner; Failure to follow safety or sanitation guidelines.

3-06. Obscene Language: No inmate shall curse or verbally abuse any other person, curse or use obscene language;

3-07. Barter: No loaning of property or anything of value for profit or increased return;

3-08. Tattooing: No inmate shall engage in "tattooing" or self-mutilation; nor will any inmate manufacture items for tattooing

3-09. Malingering: No inmate shall feign illness; as determined by a medical physician or staff;

3-10. Gambling: No inmate shall participate in betting, gambling, games of chance, or a gambling pool;

3-11. Tasks: Failure to perform assigned tasks;

3-12. Smoking: No inmate shall smoke in the facility, possess smoking materials, or tobacco products, possess matches or any flame producing devices;

3-13. Indecent exposure: No inmate shall fail to be fully dressed when out of his/her cell, or leave the pod without a uniform shirt on;

3-14. Relocate: No inmate shall relocate from his/her assigned cell or enter another inmate's cell for any reason after lockdown;

3-15. Machinery: Using any equipment or machinery contrary to instruction or posted safety standards;

3-16. Throwing: No inmate shall project any item at another person or throw any item;

3-17. Noise: No inmate shall create unnecessary or excessively loud noise by any means;

3-18. Jewelry: No inmate shall wear on his/her person, body or clothing, any earrings, tongue rings, body rings, beads, pendants, medallions, or other items of decoration jewelry, head bands, or head coverings;

3-19. Posting items: Doors, walls, windows, lights, and furniture shall be free of tacks, nails, signs, posters, pictures or other items taped, draped, tied, or stuck on. Nude pictures or pictures depicting sexual acts shall not be allowed;

3-20. Mattress: Mattresses are not allowed out of rooms;

3-21. Articles: Carrying unauthorized items out of the pod.

3-22. Attempt to commit any of the above offenses or assist others to commit any of the above acts.

3-23. Redline violation;

3-24. Communication with another classification: No inmate shall communicate by mouth, signs, symbols, or gestures to another classification inmate.

P.      On a daily basis, inmates classified to North D will receive time out of their assigned individual cell for personal hygiene and exercise. However, if a North D inmate violates any rule, he will not be permitted time out pending a hearing and may be subject to housing in Special Handling. If found guilty of the rule violation by the Hearing Officer, he will only be permitted to have time out every third day (72 hours) for the duration of the punishment imposed by the Hearing Officer.

## GRIEVANCE PROCEDURES

The Cochise County Jail Inmate Grievance system provides an avenue for inmates to make general or personal complaints relating to their incarceration, and to receive a written response. The grievance system will also function as the proper inmate appeal method for disciplinary, classification actions, and inmate account charges.

A.      Inmate Notification

1.      The inmate grievance system is provided in writing to inmates in the Inmate Handbook and includes notification of the of option to dispute administrative or disciplinary actions.

B.      Informal Resolution

1.      Informal resolution of grievance issues by staff is strongly encouraged to provide an immediate response to the inmate and to avoid overburdening the Inmate Grievance System. Upon request an inmate will be provided with a **Grievance Form.** The grievance form must by submitted to detention personnel within seven days of the event being grieved and must include the inmate's proposed resolution. Line officers shall attempt to resolve grievances that relate to issues under their immediate control. If the officer is unable to resolve the grievance, he/she will inform the inmate that the Grievance

· Form will be forwarded to the Shift supervisor.

2. The shift supervisor shall attempt to resolve a detention grievance within 4 calendars from the time he/she receives it.

3. A Grievance concerning medical will not be handled by the shift supervisor, it will be forwarded directly to the Head Medical Nurse and a copy to the Lieutenant.

C. Formal Resolution

1. If the shift supervisor is unable to resolve the grievance, he will place a check mark in the appropriate area indication that it will be forwarded as a **FORMAL GRIEVANCE**, require the inmate to acknowledge this action in Section IV of the Grievance form.

2. The officer assigned to the Grievance will indicate in Section V of the Grievance Form the actions taken, including the reasons for his/her decision.

3. If the grievance is resolved, the inmate will be required to acknowledge the resolution in Section V of the Grievance Form by signing his /her name and the date. The inmate will be given a copy of the Grievance form, and the hearing officer will appropriately log and file the original.

4. If the grievance is not resolved, the inmate will be informed of his/her right to appeal to the jail commander with 24 hours of the hearing office's response. An inmate who decides to appeal will be given a Level II Grievance Appeal Form to which he will be required to attach his copy of the Grievance Form with the Jail Commander's decision being final and not subject to administrative appeal.

5. MEDICAL GRIEVANCE: A grievance concerning medical, dental, or psychiatric diagnoses, treatment, or care will be forwarded by the officer handling the Grievance to the Director, Detention Health Services Division.

D. Filing of Grievances and Time Limitations

1. Inmates requesting a Grievance Form will be provided one before the conclusion of the shift on which he or she requested it, if possible.

2. All inmate grievance time limitations will be extended during security overrides or emergencies affecting facility operations, only for the length of time of the security override or emergency.

FLOW CHART
DETENTION GRIEVANCES

| WHO | TIME | ACTION |
|---|---|---|
| Inmate | 7 days | Submit. Alleged excessive use of force or restraint, time limit is 60 days |
| Detention Officer | 24 hrs | Resolve or forward |
| Shift Supervisor | 4 calendar days | Resolve or forward |
| Hearing Officer | 9 calendar days | Resolve or forward |
| Inmate | 24 hours | Accept or file Institutional Grievance Appeal |

INSTITUTIONAL GRIEVANCE APPEAL

| WHO | TIME | ACTION |
|---|---|---|
| Inmate | 24 hours of response receipt | Submit to Jail Commander |
| Hearing Officer | A calendar day of receipt | Log and forward |
| Jail Commander | 7 working days | Respond |
| Hearing Officer | 1 calendar day of receipt | Log for return |
| | | |

E. Inmate Copy

1. Each inmate filing a Grievance Form will be given a copy of the form after it is signed and dated by the accepting staff member, as a receipt for the filed document.

F. Emergency or Sensitive Complaints

1. When an emergency complaint indicates a threat to the health or welfare of an inmate, the grievance will be addressed

as promptly as possible. If a staff member receives an emergency complaint, he or she will so advise the shift supervisor. The supervisor will act to ensure the welfare of the inmate and document his or her action(s) on an Incident Report. The specific content of a grievance filed by one inmate will never be discussed with another inmate.

2.    If an inmate's complaint is of a sensitive nature, the inmate may file the complaint in a sealed envelope marked "grievance," addressed to the Detention Lieutenant. The inmate will explain in the grievance the reason for filing in this manner. The sealed envelope will be forwarded to the Detention Lieutenant through in-house mail or may be hand delivered by a staff member. The Detention Lieutenant will ensure that the grievance is responded to within seven business days of submission in a way that protects the privacy of the inmate. Responses to grievances filed in this manner are not appealable.

G.    Grievance Appeals

1.    If an inmate is dissatisfied with the response to his or her grievance, the response may be appealed. The Jail Commander shall take action and provide a written response to the inmate within 7 working days.

2.    The Jail Commander's decision is final and not subject to administrative appeal. The Commander's decision concludes the formal grievance procedure. The inmate may elect to file a complaint with the Federal District Court.

3.    Appeals for disciplinary actions, classification, or administrative actions will be submitted on an Inmate Request form addressed to the detention Lieutenant within 72 hours of the receipt of disciplinary action. A decision on the appeal will be made and conveyed to the inmate within 10 days of receipt of the written appeal.

H.    Prohibition of Retribution

1.    Retribution will never be taken against an inmate because of his or her filing a grievance.

I.    Freedoms Afforded Inmates Regarding Grievance System

1.    Each inmate confined in the Cochise County Jail will have the following freedoms afforded him or her concerning the inmate grievance system:

a.    To dispute any administrative procedure or formal disciplinary action;
b.    To receive a written response to a filed grievance, including rationale for the decision;
c.    To submit a grievance and seek formal redress without fear of reprisal or punitive segregation;
d.    To receive immediate response to grievances concerning valid emergencies;
e.    To have grievance decisions reviewed by detention administration;
f.    To appeal grievance decisions made by detention administration;
g.    To file grievances of a sensitive nature directly with the Detention Lieutenant;
h.    To have privacy regarding the content of a grievance.

J.    Storage of Completed Grievances

1.    After each inmate grievance has been investigated and the appropriate response has been sent to the inmate, a copy of the Inmate Grievance Form will be stored in the Classification Unit.

## TOBACCO FREE FACILITY

Inmates will not be allowed to possess tobacco products or flame producing devices in any Cochise County detention facility.

## U.S. MAIL

All inmate mail is subject to screening by detention staff. You may receive incoming mail Monday through Friday, except holidays. You are permitted to subscribe and otherwise receive **pre-approved** magazines, newspapers, and other acceptable material which may be lawfully delivered, FIRST CLASS ONLY, through the U.S. Postal Service. To receive books, newspapers, or magazines, an Inmate Request form must be submitted to the detention Lieutenant with the title and applicable author. The publications must be approved before the inmate may order or receive them. Books, Newspapers and magazines must be mailed directly from the publisher.

Inmates are not permitted to receive U.S. Mail from other inmates or prisoners.

Magazines or books which show how to make explosives or weapons will not be accepted. Books or magazines showing nudity and/or explicit sexual conduct will also not be accepted. The following additional rules also apply to mail.

1.    If you have stamps you may mail any number of letters.
2.    If you are indigent when you enter the facility, or for any 21 consecutive day periods thereafter, contact any detention officer for the procedure on obtaining writing materials. If you meet the requirements, the jail will provide you with two stamped envelopes, lined paper, and one pencil - per week for mailing letters.
3.    Contraband and food items shall not be mailed to or from this facility.
4.    All items received at the jail that are denied to inmates, may be returned to sender, and notification to the inmate will be made by the detention staff. Items delivered by the U.S. Postal Service, without a return address, will be returned to the U.S. Postal Service.
5.    Letters and photos will not be accepted at the front desk. Polaroid type photos will not be accepted. Inmates are allowed to have 20 photos in their possession no larger than 5x7.
6.    Your mailing address is:
      Inmate's Name and Pod Number
      Cochise County Jail
      203 North Judd Drive

Bisbee, Arizona, 85603

7.  All letters, except for legal mail from your attorney or the courts must be delivered to the jail through the U.S. Postal Service.
8.  All outgoing mail will be stamped by a detention officer with a Cochise County Jail return address. A return address stamp will be placed on each item regardless of whether one has been written by the sender or not.

## PACKAGES AND PARCELS
The Cochise County Jail does not allow the delivery of packages.

**Rationale:** Allowing inmates to receive packages creates the potential for serious security violations and other problems.

A.  The inspection process necessary to search for contraband involves a substantial and inordinate amount of available staff time. Packages and the items inside the packages provide a myriad of possibilities for disguising and hiding contraband.

B.  The additional property which accumulates in cells would:

1.  Increase the risk of theft, gambling, and inmate conflicts;
2.  Increase the clutter, storage problems, and fire hazard (fuel load) inside cells;
3.  If excess property has to be stored outside the cell, exceed or tax the storage space available in the vast majority of jails; and
4.  Result in sanitation problems (especially if food, other perishables, or unclean items are included in packages).

The U.S. Supreme Court has ruled that refusing to allow inmates to receive packages does not violate the Constitution.

## ITEMS BROUGHT BY THE PUBLIC – PACKAGES, BOOKS, MAGAZINES
Except through the U.S. Mail, no personal property will be accepted from the public for an inmate.
Paperback books or magazines mailed directly from the publisher will be accepted - however, **prior approval from the Detention Lieutenant is required.** All other books or publications will be returned to the sender unless prior approval has been given by the Detention Lieutenant.
All unacceptable items will be returned to the sender at the cost of the inmate or sender. The Medical Department will accept eyeglasses, hearing aids, dentures or other medically necessary items for a specific inmate. No outside medications will be accepted without the prior approval of the Detention Lieutenant and the Medical Department. Approved items can be delivered between the hours of 8:00 a.m. – 4:00 p.m.

## COMMISSARY
Commissary will be ordered and distributed once per week. Order forms with prices will be given to each inmate with funds in his or her account on Friday afternoon. Money must arrive at the jail (U.S. Mail only) by Friday in order for an inmate to receive a commissary form. The form will be filled out, signed and returned to the commissary officer by 8:00 a.m. on the following Monday. The order will be sent to an outside vendor and delivered approximately 72 hours later. Purchased telephone cards will be delivered on Thursdays. Any inmate released prior to receiving his or her order will have 72 hours to return to the jail and pick it up. If the order is not picked up within 72 hours, the ordered supplies will be utilized for indigent inmates.
Inmates sentenced to the Arizona Department of Corrections should not order commissary. However, if commissary is ordered, but not received prior to an inmate being transferred to the Arizona Department of Corrections, the ordered supplies will be utilized for indigent inmates if it is not picked up at the jail within 72 hours by a third party. Once a commissary order is placed by an inmate, the funds will not be refunded or credited to another inmate should the purchasing inmate be released or transferred.

_Personal checks are not accepted by the Cochise County Jail_. However, on occasion, the jail will receive and accept a Payroll check from an employer, made payable to an inmate. All payroll checks are subject to refusal – at the discretion of the Jail Commander. However, for those payroll checks that are accepted, a hold will be placed on the checks and the funds will be credited to the inmate's account in accordance with the following schedule:

Payroll checks, In-State — Funds will not be available for 3 business days following the deposit of the check into the jail's local bank account.

Payroll checks, Out-of-State — Funds will not be available for 7 working days following the deposit of the check into the jail's local bank account.

If you do not want a hold placed on a payroll check, do not endorse the check and it will be placed with your other personal property. To avoid having a hold placed on your payroll check, have the check paid to you in the form of a money order or cashier's check.

## FAMILY VISITATION
Participation in video-visitation is a privilege, not a right. Both visitor and inmate are expected to conduct themselves in an appropriate manner at all times during a video visit.
COCHISE COUNTY JAIL reserves the right to deny, cancel or terminate a video visit prior to or during a video session based upon

visitor or resident inmate misconduct. Cochise County Jail also reserves the right to restrict a visitor from participating in all future use of the system.

Attorney video visits will not be recorded or monitored.

All family member/friend video visits are recorded and subject to electronic monitoring by Cochise County Jail personnel. Your use of this video visitation system constitutes consent to this recording and monitoring.

Cochise County jail provides the public with free visitation during set hours at our "On-site" location.

Each inmate is allowed only two (20-minute) visits per week and not more than one 20 minute on-site visit per day; on-site visits are free of charge.

At-home visits are unlimited during the allotted scheduled hours; applicable fees apply.

An inmate will be allowed a total of three visitors per visit (including children).

Children under the age of 18 must be accompanied by an adult.

Visitors under the influence of alcohol or other substance, including intoxicants, stimulants, or depressants shall be denied access to the visitation center.

Visitors and inmates will address all staff in an acceptable manner; any disrespect, misconduct or disruptive behavior will result in the visit being terminated and possible suspension of future visitation privileges.

Children may not be left unattended by an adult while on county property, to include parking lots, approach walks, lobby area, rest rooms and any visitation area.

Website: www.visitfromhome.net

**Arizona Revised Statutes 31-130 Destruction of or injury to public jail; classification**

*A person who intentionally and without lawful authority breaks, pulls down or otherwise destroys or injures a public jail or other place of confinement is guilty of a class 5 felony.*

- Any damage to a public visitation terminal may result in criminal charges.
- Any damage to an institutional visitation terminal may result in criminal charges.
- Any damage to an institutional visitation terminal will result in the suspension of visitation privileges for that housing unit.

**Scheduling & Availability:**

All visitors (attorneys included) must schedule an appointment at least 4 hours in advance and must pay for each scheduled session prior to visitation. All scheduled appointments are non-refundable.

On-Site Visitation Hours (**Visitation Center**)

| | |
|---|---|
| Sunday | 8:00 a.m. – 2:00 p.m. |
| Monday | No Visitation |
| Tuesday | No Visitation |
| Wednesday | No Visitation |
| Thursday | 5:00 p.m. – 9:00 p.m. |
| Friday | No Visitation |
| Saturday | 8:00 a.m. – 2:00 p.m. |

*Christmas & Thanksgiving Special Visitation 8:00 a.m. – 2:00 p.m.*

At-Home Visitation Hours

| | | |
|---|---|---|
| Sunday | 8:00 a.m. – 2:00 p.m. | 3:00 p.m. – 8:00 p.m. |
| Monday | 8:00 a.m. – 2:00 p.m. | 3:00 p.m. – 8:00 p.m. |
| Tuesday | 8:00 a.m. – 2:00 p.m. | 3:00 p.m. – 8:00 p.m. |
| Wednesday | 8:00 a.m. – 2:00 p.m. | 3:00 p.m. – 8:00 p.m. |
| Thursday | 8:00 a.m. – 2:00 p.m. | 3:00 p.m. – 8:00 p.m. |
| Friday | 8:00 a.m. – 2:00 p.m. | 3:00 p.m. – 8:00 p.m. |
| Saturday | 8:00 a.m. – 2:00 p.m. | 3:00 p.m. – 8:00 p.m. |

**ATTORNEY VISITS**

There are no restrictions as to the number of attorney visits you may have or how long they last. Attorneys may visit inmates anytime other than lockdown times, between the hours of 7:00 a.m. – 8:00 p.m., unless approved otherwise by the Jail Commander.

v 2018

## MEDICAL SERVICES

Intake booking procedures include filling out a medical history questionnaire. It is important that the inmate fill out these forms truthfully and accurately. The medical staff will evaluate the inmate's medical and psychiatric history as described on the forms and determine the medical needs. The screening form is then used to establish the plan of care for the inmate. The medical staff will determine if the inmate needs to see the Jail Medical Provider or Psychiatrist from this form so it is important to fill out the form truthfully and accurately.

Inmates are required to make a co-payment for medical services. The following medical services will be free:

       Intake dental screening, if needed
       Intake physical screening, if needed
       TB screening
       STD testing and treatment, **only if symptomatic or pregnant**
       Medical emergencies as determined by the medical staff
       Tests and diagnostics ordered by the Jail Physician/medical staff
       Follow-up medical visits requested by the medical staff
       Emergency medical care (available 24 hours a day)

<u>NOTE:</u> If an inmate frequently claims an emergency, and after examination by the medical staff it is determined not an emergency, a fee will be charged to the inmate.

Fees will be charged to the inmate's personal account at the time of service. A request form will be required for: nurse sick call, provider sick call, dental screening, transportation to own physician, and over-the-counter medications furnished by the medical unit. The inmate is required to sign each request form and fill it out in its entirety. Medical Request Forms should be requested from the officer working the pod. The request forms must be ready and complete at the time of medication pass. The completed Medical Request Forms should be given to medical staff at medication pass. Medical Request Forms should not be given to the officers. Medication passes occur two times daily. Once in the morning and again in the afternoon.

If an inmate is receiving medication during medication pass, the inmate is responsible for approaching the medication cart when "meds" are called. The officer or nurse will call "meds" when they enter the pod. At this point, the inmates will line up in an orderly fashion to receive their scheduled medication. If receiving meds, or if the inmate has a medical request for over the counter medication, they must have **WATER and ONLY WATER** to take their medication. The inmate is required to have on the appropriate wrist band for identification. After medication is given to the inmate, the inmate must open their mouth and lift their tongue for a mouth inspection by the officer and nurse.

All inmates, including those who are indigent, will have access to designated over-the-counter medications that are offered through the Commissary. There will be a limit to the number of items that can be ordered per week. Acne cream and eye drops will be limited to one per month. All inmates are required to complete Medical Requests for any request for medical services or supplies whether the inmate is indigent or not.

The following over-the-counter (OTC) medications may be purchased from the Commissary at a significantly less cost than through the Medical Department:

       Eye drops
       Laxatives (for constipation)
       Head and cold remedies
       Cough drops
       Pain and headache tablets
       Various lotions, creams, soaps, ointments, and emollients
       Vaginal preparations (douches)
       Gas/upset stomach remedies
       Acne lotion
       Dental preparations
       Foot and body powders

The costs of these items will be deducted from the inmates' personal accounts by jail staff.

<u>NOTE:</u> Contact solutions will be accepted <u>only</u> if received in the **manufacturer's sealed packaging.** Any medications and/or solutions that are not either sealed as described above or pharmacy labeled for the inmate will not be accepted and will be refused or placed into personal property holdings.

Inmates must turn in a Medical Request Form to be seen in sick call. The request form must be filled out in its entirety stating the reason the inmate is requesting to be seen by medical staff. This form must be filled out truthfully and accurately. The medical request form is the staff's avenue for triaging sick calls. Written requests for health care are picked up two times daily at medication pass by a qualified health care professional and are triaged within twenty-four (24) hours. When a request describes a clinical symptom, a face to face encounter between the patient and a qualified health care professional occurs within forty-eight (48) hours (72 hours on weekends). If the inmate fails to turn in a request form (prior to sick call) or misses sick call for any reason; the inmate will wait to be seen during the next scheduled sick call unless deemed emergent.

All inmates, regardless of housing assignment, have access to regularly scheduled times for nonemergency health services, such as sick call, by filling out a Medical Request Form.

12

The procedure for sick call is as follows:

    Obtain a request form from the Detention Officers

    Fill form out appropriately and sign it; no areas should be left blank

    <u>Return the form to Medical Staff</u>

    Medical staff will arrange to evaluate the inmate through the triage process

**Medical care is never refused if an inmate has a negative personal account.** When money is received into the account any fees will be deducted at that time. A co-pay or services fee will not be charged if an inmate maintains a personal account balance of less than $3.00 for thirty (30) consecutive days. However, a negative balance will be maintained on an inmate against whom future collections may be made.

<u>FEE SCHEDULE</u>

| | | | |
|---|---|---|---|
| Nurse sick call | $10.00 | Provider sick call | $10.00 |
| Dental Visit | $10.00 | Prescription handling/ordering | $10.00 Per prescription/per month |
| OTC medications from Medical Unit | $1.00/pkg/dose | | |
| Transportation fee (personal physician) | <u>**$80.00 (base fee) subject to change**</u> | | |

Inmates must sign the intake medical screening form and booking sheets to receive medical care and/or any medications; this includes medications from home. A refusal to sign intake-screening forms is a refusal of medical care. This does not include an emergency medical need. True emergencies will be treated whether or not the intake forms have been signed.

The medical staff will assess inmates with complaints of illness and/or injury. Nurse sick call will be conducted regularly as needed and the medical staff will determine if the inmate needs to be seen by the Jail Physician or sent to the emergency room. All findings will be documented in the inmate medical chart. The Jail Provider (physician) will be available on a regularly scheduled basis. If medically necessary, the medical staff will authorize transport to outside facilities (hospital, doctor/dental offices, etc.).

Inmates that request to see their own physician must first see the Jail Provider (Nurse Practitioner). After the Jail Provider assesses the inmate, and the inmate still requests to see his or her own physician, an appointment will be made with that physician. (The outside physician must be practicing in the Cochise county area or may be located in Tucson city limits.) The inmate will be charged an $80.00 (subject to change) transportation fee that must be available in the inmates' personal account prior to the transportation to the outside physician. The inmate will also be responsible to pay for any fees the outside physician may charge (in advance), as most insurance will not cover incarcerated individuals. The physician will be required to complete the Jail Referral form and return it to the medical staff for care instructions or recommendations. Any treatments and/or medications that are prescribed by the inmate's physician must be approved by the Cochise County Jail Provider, who assumes primary care of the inmate during incarceration.

Inmates that are unwilling to follow the Jail Provider's recommendations and/or therapies, and/or medication regimens will be required to sign a waiver of refusal of medical care. At that time all medications and etc. will be discontinued and the medical unit will no longer be liable. Inmates that abuse (i.e.; misuse, cheek, sell, give away, hoard, or etc.) medications whether or not they are from medical, commissary, or prescribed will be re-evaluated and will possibly lose the use of non-essential medications from the medical unit.

## INMATE UNIFORMS - DRESS CODE

Inmates will be required to wear shoes and proper clothing outside their cells at all times. Inside the pod area proper clothing will consist of jail pants and a t-shirt **<u>(females must wear the jail top over the t-shirt)</u>**. Outside the pod area, jail tops must always be worn with t-shirts (if worn) tucked into pants. Pant legs will be rolled down when out of the pod area. Sneakers may only be worn on the recreation yard. Inmate sandals will be worn to all other functions (i.e. court, visitation, sick call, etc). Inmate workers will be allowed to wear sneakers when they are working. Unless approved for religious purposes, no headwear is authorized inside or outside the pod area.

## FOOD SERVICE

Meals will be brought to your pod area and distributed in the dayroom area. The tables in the day room may be used for meals. Consideration will be made for religious diets, special diets, and medical diets. Written prior approval must be made for consideration of any type of special diet.

No food items from meals may be saved. No food items will be allowed in the recreational or shower areas. The meal menu is prepared 30 days in advance by the food service director to provide a balanced and nutritional diet. The food service director may change the menu at his or her discretion.

## LEGAL FORMS

The Cochise County Jail, in providing access to the court and legal resources to inmates, will provide inmates with the tools, to challenge the conditions of their confinement, and/or attack their sentences, directly or collaterally.

The Cochise County Jail will provide inmates access to the following forms:

<u>Superior Court of Arizona, Cochise County:</u>

    Notice of Appeal from JP Court

    Notice of Appeal from Superior Court

    Notice of Post-conviction Relief

    Petition for post-conviction relief pursuant to Ariz. R. Crim. Pro.32

    Request for Preparation of Post-conviction Relief Record

    Arizona Rules of Criminal Procedure, Forms

<u>United States District Court for the District of Arizona:</u>

May 2018

Petition for writ of habeas corpus by a person in state custody pursuant to 28 U.S.C. 2254 (non-death penalty)
Civil rights complaint by a prisoner
Application to proceed In Forma Pauperis by a prisoner (habeas)
Application to proceed In Forma Pauperis by a prisoner, Civil (non-habeas)
Petition of writ of habeas corpus by a person in federal custody pursuant to 28 U.S.C. 2241
Motion to vacate, set aside, or correct sentence by a person in federal custody pursuant to 28 U.S.C. 2255.

In order for an inmate to receive one or more of these forms, an inmate shall submit a completed "Request for Legal Forms" to the Jail Lieutenant. The Jail Lieutenant or designee shall provide the requested forms to the inmate in a timely manner.

## HOUSING/CLASSIFICATION ASSIGNMENTS

Your housing location will be determined by your custody level, as determined by a classification evaluation. ✓
The jail provides single and double occupancy housing units for all inmates unless the facility dictates otherwise.
Inmates are assigned rooms by the detention staff; Inmates are not allowed to change rooms without prior approval from detention staff.
Inmate's shall not attempt to, or communicate (verbal, hand signs, or other gestures) with inmates of a different classification/security level.

## PERSONAL HYGIENE

Personal hygiene is very important to your health as well as the health of others. You are required to shower on a frequent basis. You are required to keep yourself neat in appearance and maintain acceptable standards of personal hygiene (i.e., brushing of teeth, etc.). Showers are to be cleaned after each use, with the outside floor area dried. All hair must be kept neat and clean. No exotic facial or head hair will be allowed. NUDITY WILL NOT BE TOLERATED OUTSIDE OF YOUR CELL OR THE SHOWER.
No inmate shall be permitted to have an acrylic or natural nail (toe or finger) in excess of 1/4 of an inch in length beyond the end of a finger, thumb, or toe.

## HOUSING UNIT SANITATION

For your health and safety, you are expected to keep your living area neat and orderly at all times. Your living area includes your assigned sleeping area and the common area. Your cell and dayroom area will stand inspection on a daily basis by the day shift sergeant or designee. A weekly inspection of the pod will be conducted by the Detention Lieutenant or designee. Non-participants in cleaning are subject to disciplinary action and may be excluded from the sanitation awards. Cleaning supplies will be provided by the jail staff.
Inmates should rise each morning in time to clean their cells, make their beds, and wash themselves before breakfast. Walls of all living quarters must be kept clear. Drawing, writing, or marking on any wall is prohibited. No pets of any kind shall be permitted in the jail. Floors should be swept, trash removed, and ledges dusted each day.
Shower facilities should be cleaned thoroughly with hot water, soap, and disinfectant cleaner every day.
Toilets, wash basins, sinks, and other sanitary equipment should be cleaned thoroughly with hot water each day.
Floors, cells walls, and built-in bunks should be scrubbed and rinsed completely once a week.
Mops and other cleaning tools should be cleaned thoroughly after each use.

## DETENTION LIEUTENANT INSPECTION

On any day, Monday through Friday, between 0900 hours and 1700 hours, the Detention Lieutenant or designee shall inspect the jail. Any housing area which appears to exceed the standard of cleanliness, may be authorized a special privilege.
1.      All inmates shall prepare for inspection in the following manner:
    a.      All rooms and common areas will be cleaned.
    b.      Beds will be completely made. Towel will be folded and displayed at a 45 degree angle across the corner end of the bed.
    c.      Toothbrush, toothpaste, and comb will be displayed on top of the towel.
    d.      All inmates will be in complete jail uniform, standing in front of their assigned room.
    e.      No talking, eating, or drinking will be allowed during inspection.
2.      Authorized special privileges:
    a.      Lockdown extended to 2200 hours for the weekends beginning Friday evening – if awarded.
    b.      Inmate workers may receive snacks for late nights -if awarded.

## INMATE BED MAKING

1.      All beds will be made by 0800 hours each morning and shall remain made until 1700 hours.
2.      Beds will be made as follows:
    a.      The mattress will be inserted into the mattress cover;
    b.      The blanket will be placed on top of the mattress cover and tucked in at the foot and sides of the bed; a second blanket will be folded at the foot of the bed during winter months when 2 blankets are issued.
    c.      The pillow will be inserted into the pillow case and placed at the head of the bed.
3.      These rules apply to all inmates housed in the facility.

## ROOM FURNITURE

No furniture will be allowed except that which originally and permanently was affixed at the time of construction. Mattresses, pillows, or bedding shall not be taken to the dayroom area. The pod garbage can will not be used as a seat. Nothing will be affixed to the wall, ceiling, or floor (photos, drawings, etc.). The pod visitation chair will only be used for visitation and shall not be moved in front of the video visitation terminal.

## LOCKDOWN

Inmates will be locked into their assigned cells from 8:00 p.m. to 6:30 a.m. Inmates who "jam" their locks will be isolated from other

inmates.

## SAFETY AND SECURITY

One of our main objectives at the jail is to maintain a safe and secure facility. Your cooperation is required so that the detention staff can ensure your safety by performing their duties without interference. The outer perimeter limits of the facility are the roof and the inner or overhead fences. Anyone caught in these areas will be considered on escape status. Inmates will not be allowed outside their assigned areas without an escort or supervision. Emergency evacuation routes are posted throughout the facility. If evacuation is required, proceed to a designated exit and wait for further instructions from the detention staff.

## HEADCOUNTS

Several times during the day our detention staff will conduct scheduled headcounts to verify the presence of all inmates. There will be occasions when staff will make unscheduled counts. Your cooperation is expected, and you may be required to return to your assigned cell. Talking to or otherwise distracting the officer conducting the headcount is a violation of facility rules, and the offender may be subject to disciplinary action.

## SEARCHES AND INSPECTIONS

For the security and safety of the inmates and staff, we will on occasion, find it necessary to conduct unannounced shakedown inspections of your pod and assigned cell. Any contraband and/or other unauthorized items will be confiscated. You must fully cooperate with the detention staff conducting the search. Inmates do not have the right to be present during these inspections.

## INMATE SEARCHES

Inmates and visitors are subject to pat searches upon leaving and/or returning to any area within this facility. Under certain circumstances this may include a visual body cavity search. You are expected to fully cooperate with all searches.

## CONTRABAND

You are prohibited from having in your possession or under your control (including your cell) any items that are not:

1. Issued to you by the staff;
2. Purchased by you in the commissary;
3. Otherwise authorized for you by our administration;
4. Being used in an appropriate manner;
5. Excessive amounts of allowable items.

The simplest explanation is that anything that is altered from its original purpose will be considered contraband and will be confiscated and disposed of by the staff. Soap art, crosses, and other jail made jewelry is contraband and will be destroyed by the staff.

## RECREATION

The main outer recreation yard and dayroom areas will be made available for use by the general population. No food or drinks are permitted in the recreation areas.

Inmates on the outer recreation yard who attempt to communicate with the public, or other inmates through the windows will be restricted from further participation in outdoor recreation.

Inmates who cause a disturbance or fail to immediately follow staff instructions while participating in outdoor recreation, will be restricted from further participation in outdoor recreation.

Inmates, who fail to follow medical instructions regarding exercise limitations, may be restricted from participating in outdoor recreation.

## TELEPHONES

Inmates have no expectation of privacy in their personal telephone calls. Inmate telephone calls may be monitored by jail officials.

Phones are available for inmate use in each pod area. All calls will be collect and are subject to recording. Phones will be turned on from 8:00 a.m. each morning to 8:00 p.m. Telephone calls will be limited to 15 minutes in duration. Any abuse of the inmate telephone system will result in disciplinary action to include criminal charges. The jail is not responsible for any telephone service irregularities or disputes. Complaints or questions should be directed to:

Securus
1-800-844-6591 (Blocks and billing issues) (Cannot be connected from Inmate Phones)
Customer_service@correctionalbillingservices.com – email
1-888-221-5671 (Phone cards…Prepay issues only) (Cannot be connected from Inmate Phones)

## LAUNDRY

Laundry services will be provided for jail issued items only. Laundry will be exchanged on a one-for-one basis. These exchanges will occur once per week. Inmates must exchange clothing at these times. Blankets will be changed once a month, as close to the first of the month as possible. Inmates are not permitted to wash or save extra jail uniforms. If you destroy, deface, or alter any jail uniform or linen item, you will be held accountable.

## INMATE PROPERTY

Due to the temporary nature of the jail and limited space, inmate property will be restricted. You will not be allowed to take anything out of your property after you are booked.

## PROPERTY - TRANSFER TO ARIZONA DEPARTMENT OF CORRECTIONS

It is the Arizona Department of Corrections (ADOC) Policy that inmates are not permitted to bring in any property, other than legal papers, during initial intake.

May 2018

Therefore, inmates transferred to the ADOC shall not be permitted to take any personal property other than money and legal papers.

Upon SENTENCING to the ADOC, the inmate will be given a Property Release Form to complete. Once the form is completed, the property will be placed in a secure storage area. The inmate will be given a copy of the completed Property Release Form.

Upon transfer to the ADOC, all personal property left at the Cochise County Jail will be stored for a period not to exceed 30 days.

A Property Release Form must be filled out by the inmate prior to transfer, and arrangements made by the inmate to have the property picked up.

Personal property will be released Tuesday through Friday, between the hours of 9:00 a.m. - 4:00 p.m.

Property remaining at the Cochise County Jail after 30 days will be disposed of at the discretion of the Jail Commander, without further notification to the inmate/owner.

Inmates transferred to the ADOC shall be transported in a jail uniform and jail shoes.

## TELEVISION

Each pod has a television which is tuned only by the detention staff. The volume shall be controlled by the detention staff. Program scheduling shall be controlled by the Jail Commander.

If a pod does not pass the daily inspection, the television will not be turned on for the entire day.

If toilet paper or any food item is found on the walls of a pod, the television will not be turned on until the items are removed from the wall.

## COMMUNICATIONS

Informal communication with staff in your housing area or at a meeting should resolve most of your needs and problems. The detention officer or supervisor will be available to help solve any problem or answer questions you might have. The grievance system is available for you to use for formal questions and comments. You may obtain request and grievance forms from any staff member. Be patient and allow sufficient time to have your question or problem researched before sending a second request or grievance form.

## PERSONAL MESSAGES FOR INMATES

A.      Only emergency messages from the general public to inmates shall be accepted by the staff.

    1.      Emergency messages shall be delivered promptly and such delivery may be recorded.

    2.      Emergency messages shall be defined as:

        a.      Death or hospitalization of an immediate family member.

    3.      Non-emergency messages for inmates shall not be accepted.

## NON - DISCRIMINATION

No inmate will be subjected to any form of discrimination based on race, national origin, color, creed, sex, economic status or political belief. All inmates will have equal access to privileges, work assignments, and basic rights, and may seek redress either within the Sheriff's Department or through the courts if they feel discrimination has been practiced against them.

## RESEARCH

Inmates will not be subjected to any kind of medical or pharmaceutical testing for experimental or research purposes.

## INMATE RIGHTS

A.      A primary right of an inmate relates to his or her personal safety and welfare. The detention staff is responsible for taking reasonable measures to prevent mistreatment of inmates by other inmates.

B.      An inmate has the right to be free from cruel and unusual punishment. Detention personnel may use only that degree of force which is necessary to defend themselves, to prevent a criminal act by an inmate or to maintain order.

C.      Inmates have a right to a healthful environment.

D.      Inmates in detention retain their rights to remain silent. No duress, harassment or coercion of any kind can be used to obtain information regarding the charge on which he or she is being held. An inmate cannot expect privacy in the jail, and anything he/she voluntarily says may be used against him/her. The right to remain silent is, however, subject to the practical limitation that the inmate should assist in assuring his/her own proper treatment by cooperating with the admission personnel at the jail. Identification data and some kind of medical history are essential to the inmate's welfare and the proper functioning of the jail. The individual inmate has no overriding interest in remaining silent as to such matters. When an individual will not cooperate with the intake procedures, the protection of other inmates requires that the individual be screened off from the general population to assure individual safety and jail security.

E.      During the admission process at the jail, a person has a right to communicate with a member of his family and with his attorney by making a reasonable number of unmonitored telephone calls or in some other reasonable manner.

F.      Persons held in custody while awaiting arraignment or trial are presumed innocent and not convicted in a court of law.

G.      Inmates are not subjected to a "kangaroo court," a "barn boss" system, or any other arrangement that utilizes inmates to maintain discipline.

H.      An inmate has the right to consult with his attorney privately as often and for as long as necessary. Conversations between inmates and attorneys will not be recorded or monitored.

I.      An inmate has a right to unrestricted and confidential access to the courts and to the executive agencies of government.

J.      Inmates have the right to freedom of religious affiliation and voluntary religious worship, providing that exercise of this right does not directly interfere with security and discipline of the jail.

## CHAPLAIN SERVICES

A chaplain is available to assist the inmate in having access to worship services, religious instruction, Bible studies, and spiritual counseling. A list of worship services that are available to the inmate will be provided once a week. The inmate may sign up to attend at that time.