**WO**                                                                    MDR

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Jonathon Isaiah Gaines,                          No.    CV-23-00403-TUC-SHR

                    Plaintiff,

v.                                               **ORDER**

Kenneth Bradshaw, et al.,

                    Defendants.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 by self-represented Plaintiff Jonathon Isaiah Gaines, who is proceeding in forma pauperis.  Plaintiff was confined in the Cochise County Jail when he initiated this action but is currently confined in the Arizona State Prison Complex-Lewis.[1]

In a December 14, 2023 Order, the Court dismissed Plaintiff's Complaint because he had failed to state a claim, denied his pending motions, and gave Plaintiff on opportunity to file an amended complaint and cure the deficiencies identified in the Order.  In a February 8, 2024 Order, the Court denied Plaintiff's Motion to Change Judge and Motion

---

[1] Although the Court previously informed Plaintiff that he "must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure" if his address changes, he failed to do so.  However, Plaintiff's First Amended Complaint contains an address at the Arizona State Prison Complex-Lewis and the Arizona Department of Corrections, Rehabilitation & Reentry's website indicates Plaintiff is confined there. *See* https://corrections.az.gov/inmate-data-search (search "Search by ADC Number" for "367131" and click on "Inmate Info" hyperlink) (last visited Oct. 9, 2024). The Court will direct the Clerk of Court to update the docket to reflect Plaintiff's current address.

to Have Oral Hearing Service, granted his Motion to Extend Deadline, and gave Plaintiff additional time to file his first amended complaint.

Plaintiff filed a First Amended Complaint (Doc. 14).  The Court will require Defendants Praigo and Savagra to answer the excessive force claims in Counts One (Defendant Praigo) and Two (Defendant Savagra) and will require Defendants Savagra, Ballardos, and Praigo to answer the Sixth Amendment legal mail claims in Counts Three (Defendants Savagra and Ballardos) and Four (Defendant Praigo).  The Court will dismiss without prejudice the remaining claims and Defendants.

## I.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised legally frivolous or malicious claims, failed to state a claim upon which relief may be granted, or sought monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Thus, although a plaintiff's specific factual

allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe [self-represented litigant's] filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a self-represented prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II.    First Amended Complaint

In his five-count First Amended Complaint,[2] Plaintiff names as Defendants the following individuals at the Cochise County Jail: Corporals Savagra, Ballardos, and Romero; Sergeant Brian Praigo; Lieutenants Ariel Monge and Crissy Heisner; Detention Officers K. Cole, S. Laidlaw, and D. Aguilar; "SSG" Nguegen; and "JC" Kenneth Bradshaw. Plaintiff seeks injunctive relief and monetary damages.

In **Count One**, Plaintiff raises a Fourteenth Amendment due process claim. He alleges on January 12, 2024, Defendant Praigo locked down everyone in the pod, came to Plaintiff's cell, and told Plaintiff to get dressed because he was being moved out of the pod. When Plaintiff asked, "Why?," Defendant Praigo told Plaintiff "this is not up for debate." Plaintiff grabbed his inmate handbook, which he claims states an inmate charged with a rule infraction is "assured freedom from excessive punishment," and proceeded to tell Defendant Praigo he had not formally charged Plaintiff with a rule infraction and Plaintiff had not received "written paperwork." According to Plaintiff, Defendant Praigo "ignored this," told Plaintiff that he was "going to be moved," and explained he did not "have to tell [Plaintiff] anything."

Plaintiff claims he began "quoting caselaw." Plaintiff claims this caselaw required Defendant Praigo to give Plaintiff written notice of the accusations. He asserts Defendant Praigo ignored him and told Plaintiff it was fine if Plaintiff "want[ed] to make this hard"

---

[2] Plaintiff's First Amended Complaint contains minor misspellings, misplaced or omitted punctuation, and incorrect verb tense. The Court, when quoting the First Amended Complaint, has corrected these without specifically noting them.

because Defendant Praigo loved using his taser. At this point, Defendant Savagra allegedly told Plaintiff they do not need to give him a hearing.

Plaintiff alleges he told Defendants Praigo and Savagra he had been doing nothing but working on his civil case and had a deadline to meet. He claims they smiled and said, "we know." Plaintiff asserts he told them he would "go" but wanted to "grab [his] legal paperwork." He contends Defendant Savagra said, "no, we have to go through it." Plaintiff stated they "had never done that before."

Plaintiff claims Defendant Praigo threatened to use a taser and pepper-ball gun. Plaintiff, "got scared," took a step back, and closed the door because he "realized their intention [was] to tamper with [his] paperwork." Plaintiff contends Defendant Praigo "sent his goon squad to beat [Plaintiff] up, tase [him], and spray [him]." He alleges Defendant Savagra "burst in[to] the room," "punched [Plaintiff] in the mouth," and "dragged [Plaintiff] to special handling in a shit-stained, black-molded cell," which, according to Plaintiff, showed "reckless disregard for [his] life, rights, and safety." Plaintiff contends he suffered emotional trauma, a loss of dignity, and "physical pain and mental anguish"; and his "case was injured as a result."

In **Count Two**, Plaintiff raises a Fourteenth Amendment excessive force claim. Plaintiff claims during the January 12, 2024 incident, Defendant Savagra "burst" into his cell; hit him in the mouth; tased him while he was already on the ground, handcuffed, and not resisting; and broke his thumb when he "intentionally stepped on [his] hand." Before Defendant Savagra tased him, Plaintiff alleges he told Defendant Savagra (1) there was water on the ground, (2) he was cuffed and was not resisting, and (3) he had a heart condition. According to Plaintiff, Defendant Savagra said, "fuck it," and then proceeded to hit Plaintiff in the mouth, tase him, and break his thumb by stepping on his hand. Plaintiff asserts, instead of allowing Plaintiff to walk out of the pod, Defendant Savagra had Plaintiff "hogtied and dragged out to set an example to the pod," and then put Plaintiff in a "shit-stained cell with black mold." Plaintiff also contends Defendant Savagra "got

permission from [Defendant] Monge to refuse [to allow Plaintiff] to get a medical request to document what he did to [Plaintiff's] hand."

Plaintiff asserts Defendant Monge informed Plaintiff he would not get a hearing regarding "any accusations" Plaintiff made and "this will be what [Plaintiff] should expect" if Plaintiff "continues to try to hold them accountable." Plaintiff claims Defendant Monge "is the one" who ordered Plaintiff out of the "North A Pod to Special Handling" because Plaintiff "held his staff accountable two days prior . . . when [Defendant Monge] ordered North A locked down for something that happened a month ago."

Plaintiff alleges Defendant Romero treated Plaintiff like he was a "terrorist [by] threatening [him], yelling, loud screaming, no negotiation, when [Plaintiff] was trying to get a phone situation fixed." He claims Defendant Romero later told Plaintiff he "wanted to take [Plaintiff] down" and was "disappointed" he did not resist.

Plaintiff also asserts when Defendant Praigo returned his "legal paper[s]" a lot of pages were missing and his civil complaint was "completely missing."

In **Count Three**, Plaintiff raises a Sixth Amendment claim regarding his mail. He asserts on six occasions his "properly marked legal mail was consistently improperly opened and read." He claims he "was only informed of two people opening it."

Plaintiff alleges on February 12, 2024, a non-party detention officer delivered Plaintiff's legal mail, which had already been opened and read outside Plaintiff's presence, without his consent. Plaintiff filed a grievance. He claims Defendant Praigo "didn't really respond to the grievance issue" but verbally told Plaintiff Defendant Savagra had opened the legal mail. According to Plaintiff, Defendant Savagra denied opening it, but claimed staff were allowed to open and read legal mail. Plaintiff asserts when he told Defendant Savagra this was "a blatant disregard" of his constitutional rights, Defendant Savagra ignored him.

Plaintiff contends on October 5, 2023, Defendant Ballardos "intentionally, improperly mishandled and read [Plaintiff's] properly marked legal mail." He asserts Defendant Ballardos delivered the legal mail "outside its envelope," with the envelope and

pages missing.  Plaintiff claims Defendant Ballardos initially "denied the circumstance of the situation" and claimed he had "no idea how this happened," but later admitted "his fault."  Plaintiff allegedly told Defendant Ballardos he had "tampered" with Plaintiff's legal mail, "which contained evidence in [Plaintiff's] case," and had "chilled" Plaintiff's communication with this attorney.  Plaintiff asserts when he asked Defendant Ballardos why he had written on Plaintiff's legal mail, Defendant Ballardos "storm[ed] off."  Plaintiff claims he filed a grievance, and Defendant Praigo said Defendant Ballardos was "being held accountable."

Plaintiff alleges this "chilled [his] communications with [his] attorney" and "potentially affected [his] case."  He claims he was left "in panic" and suffered severe mental and emotional trauma because his "right to confidentiality, privacy, [and] defense strategy was . . . destroyed."

In **Count Four**, Plaintiff raises a First Amendment claim regarding his mail. Plaintiff contends that on February 25, 2024, a non-party detention officer brought Plaintiff his legal mail, which was already open but "clearly" had been "taped shut."  Plaintiff alleges Defendant Praigo told Plaintiff he could not "reveal who opened [the mail]," but the "situation was being handled."  Plaintiff claims he told Defendant Praigo he had a right to know who had opened the mail so he could "hold that individual accountable," but Defendant Praigo told Plaintiff that Defendant Praigo "would be the one to hold [the individual] accountable."

Plaintiff alleges he told Defendant Praigo, "you consistently mess with my . . . legal mail," and explained this violates his constitutional rights.  According to Plaintiff, Defendant Praigo stated it was "not serious."  Plaintiff claims he explained this "messes with [his] cases," the "issue concerning [his] legal mail" was supported by caselaw, and he was "scared to have and send legal mail out and sent [in] from [his] criminal attorney."  Defendant Praigo allegedly told Plaintiff, "tough shit," and walked off.

In **Count Five**, Plaintiff alleges he has been subjected to cruel and unusual punishment, in violation of the Eighth Amendment.  He claims that on September 5, 2023,

Defendant Cole "began harassing and antagonizing" him, in front of Defendant Praigo, by informing Plaintiff that she, but not Plaintiff, "gets to go home every day and watch Amazon and Netflix on a 65-inch tv." Plaintiff contends he told Defendant Praigo this was an ongoing issue and Defendant Cole "does it" because she has taken Plaintiff to court and is aware of his potential sentence.

Plaintiff also alleges Defendant Praigo was "refusing [Plaintiff a] shower" by ignoring Plaintiff's requests to fix the shower. Plaintiff claims, "[a]fter a week of this," he filed a grievance. He asserts Defendant Praigo "admitted fault" but refused to return the grievance, indicating the shower had been fixed, Plaintiff would "be alright," and he "was not going to let [Plaintiff] sue [him]."

Plaintiff contends Defendant Laidlaw twice refused to give him a grievance form and, when he told her she was not allowed to refuse, she responded, "I don't care." He alleges he spoke with a non-party, who gave him the grievance form. Plaintiff claims Defendant Laidlaw did not want Plaintiff to "hold her accountable."

Plaintiff also asserts Defendant Ngugen intentionally read Plaintiff's medical request, "purposely lied about it," and then admitted fault. Plaintiff claims when asked why he did that, Defendant Ngugen indicated he was "bored."

Plaintiff claims Defendant Aguilar "intentionally lied" about Plaintiff refusing to allow her to close his cell door. He asserts this resulted in staff members coming to "do [him] harm" and moving him to a special housing unit. Plaintiff contends when he asked why he did not receive a hearing or written notice, Defendant Heisner said it was an administrative decision. He asserts Defendant Monge told him he did not deserve a hearing and should "get used to it." Plaintiff claims when he tried to talk to the administrator of the jail, Defendants Heisner and Monge intercepted his request forms. The remainder of Plaintiff's allegations are, for the most part, illegible, but appear to relate to the grievance process.

. . . .

. . . .

**III.    Discussion**

Although self-represented pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), conclusory and vague allegations will not support a cause of action, *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).    Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim if those elements were not initially pled.    *Id.*

To state a valid claim under § 1983, plaintiffs must allege they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant.    *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976).    There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability.    *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).    "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."    *Iqbal*, 556 U.S. at 676.    "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."    *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

**A.    Defendant Bradshaw**

Plaintiff has not alleged Defendant Bradshaw personally participated in a deprivation of Plaintiff's constitutional rights, was aware of a deprivation and failed to act, or formed policies resulting in Plaintiff's injuries.    Plaintiff has made no allegations at all against Defendant Bradshaw.    The Court will dismiss without prejudice Defendant Bradshaw.

**B.    Count One**

Plaintiff raises a Fourteenth Amendment due process claim, but his allegations also imply an excessive force claim.    The Court will evaluate both claims.

**1.    Due Process**

Plaintiff appears to believe he had a due process right not to be moved from his cell or his pod absent notice and a hearing.  He is incorrect.  Although a pretrial detainee "may not be punished without a due process hearing," *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996), "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense," *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).  "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004); *see also Shorter v. Baca*, 895 F.3d 1176, 1190 (9th Cir. 2018) ("Pretrial detainees have a right to procedural due process before they are subjected to more severe conditions of confinement than other detainees.").

Plaintiff does not allege the move would have subjected him to more severe conditions.  He simply alleges he was told he was being moved.  Plaintiff does not identify where he was being moved, what the conditions would be in the new housing area, or how those conditions would significantly exceed the conditions to which other pretrial detainees were being subjected.[3]  Absent more, Plaintiff's allegations are too vague and conclusory to state a due process claim.  The Court will dismiss without prejudice the due process claim.

**2.    Excessive Force**

Liberally construed, Plaintiff has stated a Fourteenth Amendment excessive force claim against Defendant Praigo for "sen[ding] his goon squad to beat [Plaintiff] up, tase [him], and spray [him]."  The Court will require Defendant Praigo to answer the excessive force claim against him in Count One.

Because Plaintiff's excessive force allegations against Defendant Savagra in Count One are duplicative of his better-pleaded allegations against him in Count Two, the Court

[3] Moreover, it is unclear whether Defendant Praigo intended to move Plaintiff to the "shit-stained, black-molded cell" *before* Plaintiff challenged Defendant Praigo's instructions and closed his cell door.

will dismiss without prejudice Plaintiff's excessive force claim against Defendant Savagra in Count One.

### C.    Count Two

In Count Two, Plaintiff contends Defendants subjected him to excessive force, in violation of the Fourteenth Amendment.  However, not all of his allegations relate to excessive force.  The Court has attempted to identify any additional claims.

#### 1.    Excessive Force – Defendant Savagra

Liberally construed, Plaintiff has stated an excessive force claim against Defendant Savagra in Count Two.  The Court will require Defendant Savagra to answer this portion of Count Two.

#### 2.    Medical Request

Plaintiff contends Defendant Savagra "got permission from [Defendant] Monge to refuse [to allow Plaintiff] to get a medical request to document what he did to [Plaintiff's] hand."  This is not an excessive force claim.  Moreover, it is unclear whether Plaintiff was denied medical care or denied documentation of his injury.  Absent more specific allegations, Plaintiff's allegation is simply too vague to state a claim against Defendant Savagra or Defendant Monte.  The Court will dismiss without prejudice this portion of Count Two.

#### 3.    Defendant Monge

##### a.    Lack of a Hearing Regarding Accusations

Plaintiff alleges Defendant Monge informed Plaintiff he would not get a hearing regarding any accusations Plaintiff made and "this will be what [Plaintiff] should expect" if Plaintiff "continues to try to hold them accountable."

Prisoners have a First Amendment right to file prison grievances, *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005), but "[t]here is no legitimate claim of entitlement to a grievance procedure," *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), and the failure to follow grievance procedures does not give rise to a due process claim. *See Flournoy v. Fairman*, 897 F. Supp. 350, 354 (N.D. Ill. 1995) (noting jail grievance

procedures did not create a substantive right enforceable under § 1983); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (implying violations of grievance system procedures do not deprive inmates of constitutional rights); *see also Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("[N]o constitutional right was violated by the defendants' failure, if any, to process all of the grievances [plaintiff] submitted for consideration."). In addition, "[t]he right to petition the government for redress of grievances . . . does not guarantee a favorable response, or indeed any response, from state officials. Moreover, the First Amendment's right to redress of grievances is satisfied by the availability of a judicial remedy." *Baltoski v. Pretorius*, 291 F. Supp. 2d 807, 811 (N.D. Ind. 2003); *see also Ashann-Ra v. Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) (concluding failure to comply with state's grievance procedure is not actionable under § 1983 and does not compromise an inmate's right of access to the courts).

Thus, the Court will dismiss without prejudice Plaintiff's claim regarding whether Defendant Monge denied him a hearing on his accusations.

### b.    Retaliation

Plaintiff contends Defendant Monge ordered Plaintiff out of the "North A Pod to Special Handling" because Plaintiff "held his staff accountable two days prior . . . when [Defendant Monge] ordered North A locked down for something that happened a month ago." This is not an excessive force claim but appears to be a retaliation claim.

A viable claim of First Amendment retaliation contains five basic elements: (1) a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct, and such action (4) chilled the inmate's exercise of his First Amendment rights (or the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68; *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (noting a retaliation claim requires an inmate to show (1) the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating the exercise of his First Amendment rights was a substantial or motivating

factor behind the defendants' conduct.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Plaintiff alleges he held Defendant Monge's staff "accountable," but this allegation is entirely vague, and it is not clear whether Plaintiff was engaged in protected conduct. Nor is it clear he suffered any harm from being moved to another unit (other than the harm associated with opposing the transfer) or the exercise of his First Amendment rights was chilled.  Finally, Plaintiff does not indicate whether Defendant Monge's decision to move Plaintiff to a different unit reasonably advanced a legitimate penological goal.  Absent more, Plaintiff's allegations are simply too vague and conclusory to state a retaliation claim against Defendant Monge.  The Court will dismiss without prejudice this portion of Count Two.

### 4.    Defendant Romero

Plaintiff alleges Defendant Romero treated Plaintiff like a "terrorist [by] threatening [him], yelling, loud screaming, no negotiation, when [Plaintiff] was trying to get a phone situation fixed."  He claims Defendant Romero later told Plaintiff he "wanted to take [Plaintiff] down" and was "disappointed" Plaintiff did not resist.

Because it appears Defendant Romero did not use any force, much less excessive force, Plaintiff has failed to state an excessive force claim.  Moreover, verbal threats are insufficient to state a § 1983 claim.  *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987) (noting defendants' threats of bodily harm to convince plaintiff not to pursue legal redress were insufficient to state a claim under § 1983, and "it trivializes the eighth amendment to believe a threat constitutes a constitutional wrong"); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("'Verbal harassment or abuse is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.'" (cleaned up) (quoting *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979))); *see also McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) ("[M]ere threatening language and gestures . . . do not, even if true, amount to constitutional violations." (quoting *Coyle v. Hughes*, 436 F. Supp. 591, 593

(W.D. Okla. 1977))).  Thus, the Court will dismiss without prejudice Plaintiff's claim in Count Two against Defendant Romero.

### 5.    Missing Paperwork – Defendant Praigo

Plaintiff contends when Defendant Praigo returned his "legal paper[s]," Plaintiff's civil complaint and some paperwork were missing.

### a.    Property

A claim regarding the seizure and destruction of Plaintiff's property arises, if at all, under the Due Process Clause of the Fourteenth Amendment.  However, the "Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986).  Even unauthorized and intentional deprivations of property do not constitute a violation of procedural requirements of the Due Process Clause if a meaningful post-deprivation remedy for the loss is available.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  The availability of a common-law tort suit constitutes an adequate post-deprivation remedy. *Id.* at 534–35; *see also Wright v. Riveland*, 219 F.3d 905, 918 (9th Cir. 2000) (concluding both state tort claims *and* prison grievance procedures provide adequate post-deprivation remedies).  Thus, the Court will dismiss without prejudice Plaintiff's property claim in Count Two.

### b.    Access to the Courts

Prisoners have a right under the First and Fourteenth Amendments to litigate their claims "without *active interference* by prison officials." *Silva v. DiVittorio*, 658 F.3d 1090, 1103 (9th Cir. 2011), *overruled on other grounds as stated in Richey v. Dahne*, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015).  The right of access to the courts is only a right to bring petitions or complaints to federal court and not a right to discover such claims or even to ligate them effectively once filed with a court. *Lewis v. Casey*, 518 U.S. 343, 354 (1996).  The right "guarantees no particular methodology but rather the conferral of a capability–the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id*. at 356.

As a matter of standing for an access-to-courts claim, a plaintiff must show that he suffered an "actual injury"—i.e., "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (citation omitted); *see also Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) ("Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" (citation omitted)); *cf. Silva*, 658 F.3d at 1104 (recognizing actual injury where plaintiff claimed pending lawsuits had been dismissed as the result of defendants' actions). A prisoner must demonstrate defendants' conduct frustrated or impeded him from bringing to court a nonfrivolous or arguable claim he wished to present. *Lewis*, 518 U.S. at 353 & n.3.

However, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Id.* at 354. The right of access to the courts "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. The nonfrivolous claim must be a direct or collateral attack on the inmate's sentence or a challenge to the conditions of his confinement. *Id.* "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.*

Plaintiff does not allege he suffered an "actual injury" from not having the missing paperwork. Thus, the Court will dismiss without prejudice the access-to-the-court claim against Defendant Praigo.

### D.    Counts Three and Four

#### 1.    Legal Mail

Liberally construed, Plaintiff has stated a Sixth Amendment legal mail claim against Defendants Savagra and Ballardos in Count Three and against Defendant Praigo in Count Four. The Court will require Defendants Savagra and Ballardos to answer the legal mail claim in Count Three and will require Defendant Praigo to answer the legal mail claim in Count Four.

### 2.    Grievances

In Count Three, Plaintiff alleges Defendant Praigo "didn't really respond to the grievance issue" regarding Defendant Savagra opening Plaintiff's legal mail and told Plaintiff he was holding Defendant Ballardos accountable.  In Count Four, Plaintiff contends Defendant Praigo refused to provide Plaintiff with the name of the individual who opened Plaintiff's legal mail.  As previously noted, there is no constitutional violation simply because a correctional official fails to follow grievance procedures, process all the grievances an individual submits, or resolve the grievances in a manner the detainee chooses.  Thus, the Court will dismiss the grievance claims against Defendant Praigo in Counts Three and Four.

### E.    Count Five

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt.  *Bell*, 441 U.S. at 535.  Pretrial detainees are "entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.'"  *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982)).  To state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case.

*Id.*; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).  However, "a de minimis level of imposition" is insufficient.  *Bell*, 441 U.S. at 539 n.21 (citation omitted).  In addition, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment."  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)).  Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard."  *Id.*

### 1.    Defendant Cole

Plaintiff contends Defendant Cole was harassing and antagonizing him about how she was going home daily to watch streaming services on a large television and Plaintiff was not.  As previously noted, this type of verbal harassment does not rise to the level of a constitutional violation.  Thus, the Court will dismiss without prejudice Plaintiff's claim against Defendant Cole.

### 2.    Defendant Praigo

#### a.    Failure to Intervene

To the extent Plaintiff alleges Defendant Praigo failed to intervene when Defendant Cole made harassing statements, he has failed to state a claim.  Officials can be held liable for failing to intercede when their fellow officers violate constitutional rights, and the officials have a reasonable opportunity to intercede.  *See Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000); *see also Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).  But Defendant Cole did not violate Plaintiff's constitutional rights.  Thus, the Court will dismiss without prejudice this portion of Count Five.

#### b.    Shower

Plaintiff's allegation regarding whether Defendant Praigo ignored his request to fix the shower for a week does not state a Fourteenth Amendment claim.  Plaintiff does not allege enough to show the lack of a shower for a week placed him at substantial risk of suffering serious harm.  Plaintiff does not allege he lacked alternative options for washing his body during that week, and it appears the lack of a shower for a week was, at most, a

"de minimis level of imposition." *Bell*, 441 U.S. at 539 n.21 (citation omitted). The Court will dismiss without prejudice this portion of Count Five.

### c.    Failure to Return Grievance

Defendant Praigo's failure to return the grievance regarding the shower did not violate Plaintiff's due process rights. Moreover, because Plaintiff's allegations do not show he suffered any actual harm from the failure to return the grievance, Plaintiff has not stated an access-to-the-courts claim. The Court will dismiss without prejudice this portion of Count Five.

### 3.    Defendant Laidlaw

Plaintiff does not allege he suffered any harm from Defendant Laidlaw refusing to give him grievance forms. Indeed, it appears another individual subsequently provided the forms. Thus, Plaintiff has failed to state a claim against Defendant Laidlaw, and the Court will dismiss without prejudice Defendant Laidlaw.

### 4.    Defendant Ngugen

Plaintiff has a Fourteenth Amendment privacy right regarding the disclosure of his medical information. *See Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("The constitutionally protected privacy interest in avoiding disclosure of personal matters clearly encompasses medical information and its confidentiality."); *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010) ("[W]hatever privacy right [an inmate] has may be overridden for legitimate penological reasons."). However, Plaintiff does not allege he suffered any harm from Defendant Ngugen reading his medical request. He does not allege Defendant Ngugen revealed the information to others or even referred to it in discussions with Plaintiff. *Cf. Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999) ("[T]he gratuitous disclosure of an inmate's confidential medical information as humor or gossip . . . is not reasonably related to a legitimate penological interest, and it therefore violates the inmate's constitutional right to privacy."). Plaintiff's allegations are too vague and conclusory to state a claim against Defendant Ngugen. The Court will dismiss without prejudice Defendant Ngugen.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 5.        Defendant Aguilar

Plaintiff alleges Defendant Aguilar lied about Plaintiff refusing to allow her to close his cell door and, as a result, staff members came to "do [him] harm" and move him to a special housing unit.  Plaintiff "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *see also Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (finding inmate's allegations based upon falsity of charges brought by a prison counselor did not state a constitutional claim).  And although Plaintiff alleges staff members came to "do [him] harm," he does not allege he was actually harmed.  As to being moved to another unit, Plaintiff does not describe the conditions in the new unit or how those conditions significantly exceeded the inherent discomforts of confinement to which other pretrial detainees were being subjected.  Absent more, Plaintiff's allegations are too vague and conclusory to state a claim against Defendant Aguilar.  The Court will dismiss without prejudice Defendant Aguilar.

### 6.        Defendants Heisner and Monge

Plaintiff contends when he asked why he did not receive a hearing or written notice, Defendant Heisner said it was an administrative decision and Defendant Monge told him he did not deserve a hearing.  As the Court has explained, a pretrial detainee "may not be punished without a due process hearing," *Mitchell*, 75 F.3d at 524, but "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell*, 441 U.S. at 537.  Plaintiff's allegations are too vague and conclusory to conclude he suffered "punishment" and would require a hearing.  Thus, the Court will dismiss without prejudice this portion of Count Five.

To the extent Plaintiff alleges Defendants Heisner and Monge interfered in the grievance process or in his attempts to contact the administrator of the jail, he has failed to state a claim because there is no legitimate claim of an entitlement to a grievance procedure.  Thus, the Court will dismiss without prejudice this portion of Count Five.

. . . .

**IV.    Warnings**

    **A.    Release**

        If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a non-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

    **B.    Address Changes**

        Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

    **C.    Copies**

        Because Plaintiff is currently confined in an Arizona Department of Corrections, Rehabilitation & Reentry Complex or Private Facility subject to General Order 23-19, Plaintiff can comply with Federal Rule of Civil Procedure 5(d) by including, with every document Plaintiff files, a certificate of service stating that this case is subject to General Order 23-19 and indicating the date the document was delivered to prison officials for filing with the Court. Plaintiff is not required serve Defendants with copies of every document or provide an additional copy of every document for the Court's use.

        **If** Plaintiff is transferred to a facility other than one subject to General Order 23-19, Plaintiff will be required to: (a) serve Defendants, or counsel if an appearance has been entered, a copy of every document Plaintiff files, and include a certificate stating a copy of the filing was served; and (b) submit an additional copy of every filing for use by the Court. *See* Fed. R. Civ. P. 5(a), (d); LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

. . . .

. . . .

TERMPSREF

**D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (noting a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Count Five and Defendants Bradshaw, Heisner, Monge, Aguilar, Laidlaw, Cole, Romero, and Ngugen are **dismissed** without prejudice.

(2)     If Plaintiff attempts to amend to address the shortcomings identified in this Order, the amended complaint must be filed on the court-approved form and retyped or rewritten in its entirety (including those claims and Defendants that were not dismissed), and Plaintiff must comply with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure.

(3)     The following Defendants must answer the following claims:

(a)     Defendant Praigo must answer the excessive force claim in Count One;

(b)     Defendant Savagra must answer the excessive force claim in Count Two;

(c)     Defendants Savagra and Ballardos must answer the legal mail claim in Count Three; and

(d)     Defendant Praigo must answer the legal mail claim in Count Four.

(4)     The Clerk of Court must send Plaintiff this Order and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons forms for Defendants Praigo, Savagra, and Ballardos.

(5)     Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

. . . .

TERMPSREF

(6)   If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7)   The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

(8)   The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants must include a copy of this Order.

(9)   A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within 30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(10)   The Marshal must immediately file signed waivers of service of the summons.  If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)   personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)   within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant.  The costs of service must be enumerated on the return of service form (USM-285) and

TERMPSREF

must include the costs incurred by the Marshal for photocopying additional copies of the Summons, First Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11)    Defendants Praigo, Savagra, and Ballardos must answer relevant portions of the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(12)    Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(13)    The Clerk of Court must update the docket to reflect that Plaintiff is confined in the Arizona State Prison Complex-Lewis and his inmate number is 367131. The Clerk of Court must send this Order to Plaintiff at that address.

Dated this 19th day of November, 2024.

Honorable Scott H. Rash
United States District Judge